AMERICAN DREDGING
COMPANY, Plaintiff,

v.

ATLANTIC SEA CON, LTD. and CH2M
Hill Southeast, Inc., Defendants.

Civ. A. No. 86–454.

United States District Court,
D. New Jersey.

June 30, 1986.

Gruccio, Pepper, Giovinazzi, Butler, DeSanto & Mann, P.A. by James J. Gruccio, Vineland, N.J., for plaintiff.

Gorelick & Groon, P.A. by Henry Gorelick, North Wildwood, N.J., Pepper, Hamilton & Scheetz by Kenneth M. Cushman, Philadelphia, Pa., for defendant Atlantic Sea Con, Ltd.

Lewis & McKenna by Paul Z. Lewis, Saddle River, N.J., for defendant CH2M Hill Southeast, Inc.

## OPINION

GERRY, District Judge.

Plaintiff American Dredging Company (American Dredging) initiated the instant action in New Jersey Superior Court on June 18, 1985. In the state court complaint, plaintiff named three defendants: Atlantic Sea Con, Ltd. (Sea Con), Cape May County Municipal Utilities Authority (MUA), and CH2M Hill Southeast, Inc. (CH2M Hill). According to the complaint, Sea Con has the general contract to build regional wastewater facilities for the MUA. Plaintiff American Dredging and defendant Sea Con allegedly entered into a subcontract on December 12, 1984, under which American Dredging was to excavate trenches in the ocean outfall area of Wildwood Crest and Avalon for defendant Sea Con. During the course of its performance of the dredging work, certain disputes developed between American Dredging and Sea Con. According to plaintiff, they experienced substantially changed conditions

from those represented in the contract documents, and therefore incurred increased costs and penalties for delays by way of liquidated damages held by Sea Con. Plaintiff alleges that the engineer, CH2M Hill, and the MUA failed to promptly and effectively investigate those changed conditions, and that they have not authorized the release of additional monies to compensate American Dredging for its increased costs in performing the dredging work.

Shortly after the action was filed in state court, defendants CH2M Hill and the MUA filed motions to dismiss plaintiff's complaint. On December 16, 1985, the Honorable Steven P. Perskie ruled that the portions of plaintiff's complaint setting forth allegations of breach of contract by the MUA and CH2M Hill were dismissed. However, the order also provided that the portions of plaintiff's complaint setting forth negligence allegations against the MUA were dismissed without prejudice. The transcript of the proceedings before Judge Perskie shows that the potential tort claim against the MUA was dismissed for failure to comply with the provisions of the New Jersey Tort Claims Act. Specifically, Judge Perskie noted that no formal notice of claim or notice of intention to file suit had been filed with the MUA prior to institution of the action. Judge Perskie went on to say that the time within which to file a motion for leave to file a late notice of claim had not yet expired, and that he would entertain such a motion if it were made. It was for this reason that the dismissal was without prejudice.

With the dismissal of the MUA from the action, only two defendants remained: Sea Con and CH2M Hill. These two defendants filed a joint petition for removal of the action to federal court on February 3, 1986. According to the petition, there exists complete diversity of citizenship now that the MUA is out of the action.

This case is presently before the court on three motions: (1) defendant Sea Con's motion to admit Kenneth M. Cushman, Esquire, *pro hac vice;* (2) plaintiff American Dredging's motion for a remand of the action to state court; and (3) defendant Sea Con's motion for a stay pending arbitration. The first motion, to admit Mr. Cushman *pro hac vice* has been granted, and we welcome Mr. Cushman before our court.

The second motion—plaintiff's motion to remand the entire case to New Jersey Superior Court—is somewhat more complicated. Plaintiff argues that a remand is required because the action was improperly removed to this court. Plaintiff asserts and defendants concede that this action was non-removable when initially filed. At that time, there was no diversity since both plaintiff American Dredging and defendant MUA are citizens of the State of New Jersey. In plaintiff's view, the fact that the MUA was later dismissed from the action did not make the case removable.

■ A long line of case authority supports the plaintiff's position. Courts have repeatedly recognized the proposition that when diversity of citizenship is the basis of removal jurisdiction, diversity must exist both at the time the original action was filed in the state court and at the time removal is sought. *E.g., Kellam v. Keith,* 144 U.S. 568, 12 S.Ct. 922, 36 L.Ed. 544 (1892); 14A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3723. An exception to this rule is that when a non-diverse defendant is dropped from the state court action, the case may become removable even though diversity did not exist when the state court action was commenced. *E.g., Powers v. Chesapeake & Ohio Railway Co.,* 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898). However, the great weight of authority holds that this exception only applies where the non-diverse defendant is dropped as the result of some voluntary action by the plaintiff. That is, courts have drawn a distinction between a state judge terminating the action as to a non-diverse party (e.g., by granting a defendant's motion to dismiss)—which does not make the action removable—and the plaintiff voluntarily terminating the action as to a non-diverse party—which does make the action removable. *E.g., Great Northern Railway Co. v. Alex-*

*ander,* 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918); *Weems v. Louis Dreyfus Corp.,* 380 F.2d 545, 548 (5th Cir.1967). This interpretation of the removal provisions has survived the 1949 amendment of 28 U.S.C. § 1446, *e.g., Winters Government Secs. Corp. v. NAFI Employees Credit Union,* 449 F.Supp. 239 (S.D.Fla. 1978), and has received the approval of commentators. 14A Wright, Miller & Cooper § 3723; 1A *Moore's Federal Practice* ¶ 0.161[2].

In their submissions opposing the remand motion, defendants do not quarrel with the general rule that for a case to be removable on the basis of diversity, diversity must exist both at the time of removal and at the time of the initial pleading. However, they do take issue with the continued validity of the voluntary/involuntary dismissal test just discussed. Specifically, they contend that under certain circumstances an involuntary dismissal should be considered the functional equivalent of a voluntary dismissal, thereby rendering the action removable for the parties who remain in the lawsuit. In support of this view, they direct the court's attention to the Second Circuit opinion in *Quinn v. Aetna Life & Casualty Co.,* 616 F.2d 38 (2d Cir.1980). However, *Quinn* is distinguishable from the case at bar. In *Quinn,* the plaintiffs had not appealed the dismissal of the non-diverse defendant at the time the trial judge ruled on the propriety of removal, and their time to do so had expired. Thus, there was no possibility that the non-diverse defendant would or could be brought back into the action at a later date; the dismissal as to that defendant was final. Here, by contrast, the dismissal of the MUA from the action is by no means final. First, it is not clear that plaintiff would have been able to appeal Judge Perskie's order immediately. Second, since the dismissal was without prejudice, it left open the distinct possibility that plaintiff could bring the MUA back into the action after complying with the procedural requirements of the New Jersey Tort Claims Act.[1]

█ Aside from the fact that *Quinn* is distinguishable from the instant case, there is no indication that the Third Circuit will follow the lead of the Second Circuit and depart from the bright-line voluntary/involuntary dismissal test. Defendants have pointed to one district court case from this Circuit, *Cook v. Pep Boys,* 641 F.Supp. 43 (E.D.Pa.1985), which they believe adopts the Second Circuit approach. However, *Cook* was not decided on the basis of the voluntary/involuntary dismissal dichotomy; the decision to deny a remand rested on other grounds. It is true that the trial court did not reject out of hand the defendants' argument that the dismissal of the non-diverse defendant should be deemed the functional equivalent of a voluntary dismissal. Nevertheless, the court did ultimately reject the argument, in part because there was the possibility that plaintiff could have sought appellate review of the dismissal at some future time. Since the dismissal was not final, the court felt that it could not treat the dismissal as the functional equivalent of a voluntary dismissal. Significantly, the court reached this conclusion despite the fact that plaintiff had failed to oppose the motion to dismiss. In the present case, by contrast, the plaintiff vigorously opposed

---

**1.** This court reserved decision on the pending motions after the April 4, 1986 oral argument. On May 19, 1986, Kenneth M. Cushman, Esq., counsel for Sea Con, submitted a letter to the court expressing his belief that plaintiff would now be time-barred from bringing the MUA back into the action under the Tort Claims Act. According to Mr. Cushman, plaintiff's time to file a notice of late claim under N.J.S.A. 59:8–9 expired on May 14, 1986, because American Dredging knew as of May 14, 1985 that sheeting had not been installed. In response, counsel for American Dredging argues that its one year period within which to file a notice of late claim

will not expire until September of 1986, because it was not until September of 1985 that Atlantic Sea Con formally refused to install the steel sheeting. In the court's view, the question of when plaintiff's time to file a notice of late claim expired can only be resolved after substantial discovery and briefing. For purposes of this motion, however, it is unnecessary to resolve this issue. American Dredging's position that it has until September, 1986 to file a late notice is at least arguable. Thus, the possibility exists that the state court could, on remand, allow plaintiff to bring the MUA back into the action.

the dismissal of the MUA. Thus, there would be even less justification for this court—as opposed to the court in *Cook*—to treat the dismissal of the defendant as the functional equivalent of a voluntary dismissal.

 In addition to their argument that the dismissal of the MUA was "voluntary," the defendants offer a second basis for sustaining the removal. Defendants seek to rely on another exception to the general rule that diversity must exist both at the time of the removal and at the time the action was filed. Under this other exception, if the non-diverse defendant is found to have been "fraudulently" joined, the citizenship of that defendant may be ignored and the action may be removed. *Chesapeake & Ohio Railway v. Cockrell*, 232 U.S. 146, 147, 34 S.Ct. 278, 58 L.Ed. 544 (1914). In this context, the term "fraudulent joinder" does not require a showing of fraud in the conventional sense; it in no way reflects on the integrity of plaintiff or of plaintiff's counsel. *Newman v. Forward Lands, Inc.*, 418 F.Supp. 134, 136 n. 1 (E.D.Pa.1976). The standard for determining whether the joinder is fraudulent has been articulated by Professor Moore in the following manner:

> The joinder may be fraudulent if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state. If, however, there is a real possibility that the plaintiff has stated a cause of action, the joinder is not fraudulent, and the cause should be remanded.

1A Moore's Federal Practice ¶ 0.161[2]. Where fraudulent joinder is alleged, the defendants bear the burden of demonstrating the "fraud" and the existence of federal jurisdiction. Their burden in this regard is a heavy one. "In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981). In

addition, fraudulent joinder must be established by clear and convincing evidence. *Nobers v. Crucible, Inc.*, 602 F.Supp. 703, 705–06 (W.D.Pa.1985); *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir.1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964). Thus, unless the defendants can show by clear and convincing evidence that there is no possible basis for imposing liability on the non-diverse defendant under the applicable state law and the facts alleged, the action must be remanded to state court.

With the foregoing legal principles in mind, the court now turns to an evaluation of the arguments advanced by defendants here. Defendants contend that plaintiff failed to state a cause of action either in tort or in contract against the MUA. To the extent that defendants criticize the plaintiff's alleged contract claim, their point is well taken. Judge Perskie ruled that the contracts themselves, i.e., their exculpatory clauses, precluded such a contract claim:

> I don't think that the complaint sets out a cause of action in contract against either defendant, nor do I think that it could. I think that the documents are clear and specific, and I think that they in effect preclude the assertion of any contractual cause of action and thereby an action for breach of contract by the plaintiff against ... MUA and against the engineer.

(Transcript of proceedings, 12/16/85.)

 With respect to plaintiff's potential claim against MUA, however, the court concludes that defendants have failed to establish fraudulent joinder under stringent test just discussed. In the court's view, the defendants have not demonstrated, by clear and convincing evidence, that there is no possibility that plaintiff has stated a cause of action in tort against MUA. Although Judge Perskie dismissed the claim, the dismissal was without prejudice and was premised solely on plaintiff's noncompliance with the notice provisions of the New Jersey Tort Claims Act. Judge Perskie did not definitively determine whether plaintiff sufficiently stated a cause of action in tort against MUA.

Defendants urge that plaintiff's tort claim against MUA is fatally flawed because MUA is immune from liability stemming from its discretionary acts under N.J. S.A. 59:2–3(a), a portion of the Tort Claims Act. In response, plaintiff points to the New Jersey Supreme Court ruling in *Costa v. Josey*, 83 N.J. 49, 415 A.2d 337 (1980). According to *Costa*, the term "discretion" as used in N.J.S.A. 59:2–3(a) cannot be given a literal interpretation, or else it would effectively exempt from the operation of the Tort Claims Act all government action unless it resulted from mere inadvertence. This is so because almost all official conduct, no matter how ministerial, involves the exercise of some judgment and decisionmaking. *Costa, supra*, 83 N.J. at 60, 415 A.2d 337. Consequently, *Costa* articulated a distinction between high-level policymaking and decisions made at the operational, as opposed to the planning, level. According to *Costa*, the immunity granted by N.J.S.A. 59:2–3(a) concerns only basic policymaking—the type of decisionmaking which occurs at the planning level. Moreover, this immunity is contingent upon proof that discretion was actually exercised at that level by an official who, faced with alternative approaches, weighed the competing policy considerations and made a conscious choice. *Costa, supra*, 83 N.J. at 59, 415 A.2d 337.

In the present case, the court finds it at least arguable that the MUA engaged in activity which is not protected by N.J.S.A. 59:2–3(a). Put another way, the court cannot say that it is "obvious" that plaintiff's tort claim against the MUA is deficient under New Jersey law. It may be that plaintiff could establish that the MUA's decision to allow Sea Con to omit steel sheeting or to deny the plaintiff's claims for increased costs took place at the operational, rather than at the policymaking, level. Whether the plaintiff will ultimately prevail on this point is an issue which goes beyond the scope of this motion. Defend-

ants seek to have this court render a decision as to whether the MUA's activities were protected without discovery and without an investigation as to the complete factual basis underlying plaintiff's claim against MUA. We decline to render such a ruling. For purposes of this motion, it is sufficient that we have found plaintiff's tort claims against the MUA to at least be colorable.[2]

Having determined that there exists the possibility that plaintiff may have stated a tort claim against the MUA, the court finds that the joinder of MUA as a defendant in the instant action cannot be termed "fraudulent." Since the joinder was not fraudulent, defendants had no right to remove the action to federal court, and the plaintiff's motion to remand the case to the Superior Court of New Jersey must be granted. In view of this disposition, the court cannot address the third motion before it, namely, defendants' motion for a stay of the proceedings.

Counsel for plaintiff shall submit an order consistent with this opinion.

---

**2.** Defendants argued in the alternative that plaintiff's tort claim was defective for failure to allege with specificity a duty running from MUA to plaintiff. Under the liberal pleading rules

applicable both in state and federal court, we find the plaintiff's claim sufficient in this respect.