No. 85–1593.   COUGHLIN ET UX. v. WESTINGHOUSE BROAD-
CASTING & CABLE, INC.   C. A. 3d Cir.   Certiorari denied.   ■

CHIEF JUSTICE BURGER, with whom JUSTICE REHNQUIST
joins, dissenting.

In *Dun & Bradstreet, Inc.* v. *Greenmoss Builders, Inc.*, 472
U. S. 749, 764 (1985) (BURGER, C. J., concurring in judgment),
I wrote to express my agreement with JUSTICE WHITE that *New
York Times Co.* v. *Sullivan*, 376 U. S. 254 (1964), should be re-
examined.   Petitioners in this petition ask this Court for such a
reconsideration.   I dissent from the Court's refusal to grant cer-
tiorari and give plenary attention to this important issue.

Respondent conducted an investigation into the alleged failure
of Philadelphia police to enforce state liquor laws against an "after
hours" bar.   In the course of that investigation, they hid a camera
across the street from the bar and videotaped police officers
entering and leaving the bar.   Respondent ultimately broadcast a
videotape of petitioner leaving a bar on October 11, 1981.   The
videotape stated that "the only paperwork we saw [petitioner]
doing was *carrying this envelope* out of the Club less than a
minute after he went in."   A freeze frame with a circle around an
object in petitioner's hand was used to emphasize the point.   The
announcer went on to say that the officer had difficulty finding
the proper key to start his patrol car and that he was not wearing
his uniform jacket or hat, "all standard items officers on patrol
are required to have."   The clear implication of the broadcast was
that petitioner had accepted a bribe.   Respondent made no at-
tempt to obtain petitioner's explanation for these events other
than an "ambush" interview four months after the fact.   In this
"interview," a reporter for respondent approached petitioner
with cameras whirling as he came off of his all-night shift and
asked what he had been doing four months earlier on the night of
October 11, 1981.   Petitioner said "this here is harassment" and
declined to answer questions at that time.

Petitioner and his wife filed a libel suit in District Court.   He
alleged that even a minimal investigation of the events of that
evening would have revealed that he was a rookie policeman, pa-
trolling alone for the first time on October 11, 1981; that early in
his shift, he was ordered to investigate a vandalism complaint at

the bar; that after talking to the bar's steward, he returned to the patrol car and filled out his incident report book; and that he was not required to wear his jacket or hat while on patrol. Petitioner further alleged that the purported "envelope" was in fact nothing other than his incident report book. The District Court concluded that petitioner had raised a genuine issue of material fact concerning the truth of the allegedly defamatory statements and that the broadcast was capable of a defamatory interpretation. 603 F. Supp. 377 (ED Pa. 1985). Applying our decision in *New York Times Co.* v. *Sullivan*, however, the District Court concluded that petitioner had not introduced sufficient evidence of "actual malice" on the part of respondent to withstand a motion for summary judgment. The Court of Appeals affirmed, concluding that the District Court had properly evaluated petitioner's evidence of actual malice. 780 F. 2d 340 (CA3 1985). One judge concurred, observing that "[t]he *New York Times* standard makes it hard enough for a public figure to win a libel suit, even when faced, as here, with what any fair observer must agree is egregious conduct on the part of the media." *Id.*, at 349 (Becker, J.).

Petitioner has raised an important federal question that we should review. He has been accused of accepting a bribe on the basis of a cursory investigation, yet his libel suit to clear his name has been found to be constitutionally barred. The District Court observed: "An issue . . . exists as to whether [respondent], with a minimum of effort, could have discovered the truth. The Supreme Court's mandate, however, is clear: 'reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.'" 603 F. Supp., at 388 (quoting *St. Amant* v. *Thompson*, 390 U. S. 727, 731 (1968)). I would grant certiorari and set this case for argument to determine whether the Court's "mandate" remains an appropriate one.