**LITTLE ROCK SCHOOL DISTRICT,
et al., Appellees,**

v.

**PULASKI COUNTY SPECIAL SCHOOL
DISTRICT NO. 1, et al., Appellants.**

No. 86–2047.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 19, 1986.

Decided Nov. 19, 1986.

See also, 8th Cir., 787 F.2d 372.

Phil C. Neal of Chicago, Ill., for appellants.

Phil Kaplan, Little Rock, Ark. and Theodore M. Shaw, New York City, for appellees.

Before HEANEY, ROSS and ARNOLD, Circuit Judges.

PER CURIAM.

When this case was last before us, we held that the Pulaski County Special School District No. 1 of Pulaski County, Arkansas (PCSSD), had violated the fourteenth amendment in certain respects, and that these violations had an interdistrict effect. *Little Rock School District v. Pulaski County Special School District No. 1,* 778 F.2d 404 (8th Cir.1985) (en banc), *cert. denied,* —— U.S. ——, 106 S.Ct. 2926, 91 L.Ed.2d 554 (1986). A major portion of the relief ordered related to the boundaries be-

tween PCSSD and the Little Rock School District (LRSD). We said:

3. The district court, after a hearing, shall adjust the boundaries between PCSSD and LRSD as follows:

(a) All land within the City of Little Rock shall be assigned to LRSD, and the students living in that area shall be assigned to schools in LRSD.

(b) All land in the Granite Mountain area will be included in PCSSD, and the students living in that area shall be assigned to schools in PCSSD. The record is not clear as to the precise boundaries of this area, thus evidentiary hearings will be held by the district court to determine them. It is the intent of this Court that the boundaries of this area shall reasonably reflect the area that was impacted by the 1953 deannexation of land from PCSSD to LRSD.

(c) In lieu of the adjustments indicated in (a) and (b), the district court, upon application by a party to this appeal, may conduct evidentiary hearings to determine whether adjustments other than those indicated in (a) and (b) would have substantially the same impact on the student populations of each district and would better meet the educational needs of the students of the districts involved. After such hearings, the district court may make adjustments to the boundaries other than those indicated above if it finds that they would better meet the educational needs of the students, and would remedy the constitutional violations to the same extent as the adjustments in (a) and (b).

778 F.2d at 435 (footnote omitted).

On remand, the district court held an evidentiary hearing and entered an order placing in effect its boundary-line remedy. The district court rejected a plan submitted by PCSSD and accepted a plan submitted by LRSD and supported by the Joshua intervenors, who represent the black schoolchildren who are the true aggrieved parties in this whole litigation. The district court's order states, in pertinent part:

* * * with the exception of the Granite Mountain area described above, henceforward the boundaries of the Little Rock School District, both now and in the future, shall be coterminous with the boundaries of the City of Little Rock as they exist now and as they will exist in the future as the city expands.

*Little Rock School District v. Pulaski County Special School District*, No. LR–C–82–866 (E.D.Ark. August 1, 1986), slip op. 3.

■ The portion of this order directing that the boundaries of LRSD shall automatically expand, at the expense of PCSSD, whenever the City of Little Rock annexes new territory, cannot stand. The boundary-line change we ordered was based upon "all of the defendants' interdistrict violations outlined in [our] * * * opinion * * *." 778 F.2d at 435 n. 20. This change was designed to produce, among other things, a student ratio within LRSD of approximately sixty percent black and forty percent white. *Id.* at 419. The remedy prescribed was intended to be a full and sufficient correction of wrongs done in the past. If PCSSD or some other governmental entity commits another constitutional violation in the future which has an interdistrict segregative effect, the courts will of course be open and able to order an appropriate remedy on proper proof. But at least for the time being, the boundary change between the two districts must be a one-time change.

LRSD and the Joshua intervenors point to a finding made by the district court during the trial of the question of liability to the effect that PCSSD chose to "freeze" its boundaries in order to hold down the number of black students within its borders. On the previous appeal we affirmed this finding as not clearly erroneous. 778 F.2d at 418–19. That boundaries were frozen in the past, however, does not prove that they will continue to be frozen for the indefinite future, and the district court has not so found. We simply do not know what annexations the City of Little Rock may undertake in the future, or what posi-

tion with respect to any such annexation's effect on school-district boundaries will be taken by either LRSD or PCSSD. Any such facts and their legal consequences must be left to future development.

■ It follows that the district court's order, insofar as it expands automatically the boundaries of LRSD in the event of any future annexation of territory by the City of Little Rock, cannot stand. Ordinarily, it would be appropriate at this point to remand the case to the district court with directions to reconsider the question of remedy in light of this opinion. Here, however, we believe this procedural step is unnecessary. The order of the district court, when taken in the context of the entire case, sufficiently evinces a determination that the boundary line between LRSD and PCSSD, except for the Granite Mountain area, should, to the fullest extent possible, coincide with the municipal limits of the City of Little Rock. We are virtually certain that, in the event of a remand, the district court would simply reform its order by removing that portion having prospective effect, and would direct that the boundary line between the two school districts be the city limits as they existed at the time of the hearing on remand before the district court, June 16–19, 1986.

■ The question before us, then, comes down to this: Is an order fixing the school-district boundary line at the city limits as of June 19, 1986, an abuse of discretion? We think the answer to this question is clearly no. Our en banc opinion on the prior appeal indicated a clear preference for the city limits as the school-district boundary line. It gave the district court discretion to prescribe other limits, but only on a finding that those other limits "would have substantially the same impact on the student populations of each district and would better meet the educational needs of the students of the districts involved." 778 F.2d at 435. The presumption, in other words, was that the boundary line should coincide with the city limits as they existed at a particular point in time, with leave granted to the district court, in its discre-

tion, to select another boundary line if the specified facts set out in our opinion could be found. On remand, PCSSD did submit an alternate plan, but the district court rejected it, and we believe this action was within the discretion of that court as delineated in our previous opinion. Although portions at least of the PCSSD plan may have points to commend them, it is not clear that the plan "would better meet the educational needs of the students of the districts involved," certainly not sufficiently clear to justify the substitution of our judgment for that of the district court, which is the trier of fact and in whose discretion this kind of decision normally lies.

It is true, as pointed out in PCSSD's brief and at oral argument, that the city limits are somewhat different now from what they were in November of 1985, when our en banc opinion was filed. The record before us demonstrates, however, that adding the territory annexed since November of 1985 to LRSD will not substantially change the student-population makeup that we had in mind when our en banc opinion was filed. We therefore believe that this relatively small deviation by the district court from a literal reading of our en banc opinion is within that court's discretion. We are fortified in this conclusion by the fact that none of the parties, during the proceedings on remand before the district court, made any point of the additional, post–1985, annexations, or suggested to the district court that its decision should be based on the city limits as they existed at the time our en banc opinion was filed, rather than as they existed at the time of the evidentiary hearing before the district court.

In short, to the extent that the order of the district court directed that the boundaries between the two school districts shall automatically change whenever additional territory is annexed to the City of Little Rock, it should be reversed. To the extent that the order directs that the boundary between the two school districts shall be the city limits of the City of Little Rock as

they existed on June 19, 1986, when the evidentiary hearing in the district court ended, it should be affirmed. The effect of this action is to fix the boundary line between the two school districts at the same location where the city limits were on June 19, 1986, with the exception of the Granite Mountain area.