James **COUGHLIN**

v.

**WESTINGHOUSE BROADCASTING AND CABLE, INC., et al.**

.Civ. A. No. 87–1299.

United States District Court, E.D. Pennsylvania.

June 21, 1988.

William P. Murphy, Philadelphia, for plaintiff.

Westinghouse Broadcasting and Cable, Inc., James Thompson and KWY–TV–3 by Jerome J. Shestack, Philadelphia, Pa., for defendants.

## OPINION *

### LOUIS H. POLLAK, District Judge.

This matter has an extended history. It has its origins in a broadcast in 1982. A television representation of the activities of plaintiff, a Philadelphia police officer, was regarded by plaintiff as defamatory, and he initiated a proceeding sounding in defamation in which the defendant was Westinghouse, the owner of the local television station in question. That proceeding resulted in a grant by Chief Judge Luongo of summary judgment in favor of defendant. 603 F.Supp. 377 (E.D.Pa.1985). Judge Luongo determined that there was no basis for a finding of malice. Accordingly, the plaintiff could not prevail under *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

Judge Luongo's determination was affirmed by the Court of Appeals, 780 F.2d 340 (3d Cir.1985) (per curiam), and the Supreme Court denied certiorari, Chief Justice Burger and Justice Rehnquist dissenting from the denial of certiorari, 476 U.S. 1187, 106 S.Ct. 2927, 91 L.Ed.2d 554 (1986).

In 1987, plaintiff initiated an action in the Court of Common Pleas against Westinghouse and an individual defendant, James Thompson, station manager of the local television station. This action sounded not in defamation, but in breach of a duty to retract. Alleged in the complaint was the transmission of a letter demanding retraction of the fallacious broadcast. Alleged further was that retraction had been denied.

That proceeding was removed to this court on diversity grounds, there being diversity between the plaintiff and Westinghouse, just as there had been in the original proceeding. Plaintiff moved to remand on the ground that there was also a non-diverse defendant, Mr. Thompson. Defendant took the position that the joinder of Mr. Thompson was fraudulent in the doctrinal sense that there could be no possible recovery against Mr. Thompson—that Mr. Thompson's insulation from liability was an *a fortiori* case as compared with the non-liability of defendant Westinghouse, on which defendants also insisted.

The argument largely turned on whether there was any significant likelihood that the courts of Pennsylvania would recognize —and, therefore, that this federal district court in diversity, as a surrogate court of Pennsylvania, should recognize—a right of retraction, or, in the alternative, a right to be compensated in damages for failure to retract where it was alleged that a defendant had published false and defamatory matter and then declined retraction when the falsity was so plain that non-retraction connoted malice.

I determined as an initial matter that though I thought it less than likely, there was, nonetheless, in my judgment, a reasonable possibility that such a claim could be maintained, and that it would lie not only against the television station, but a station manager, and I granted the motion to remand.

Defendants asked me to reconsider the remand. On the motion to reconsider, certain matters were established by way of

---

\* This opinion was delivered from the bench and thereafter transcribed by the court reporter; to make the transcribed version more intelligible, some minor changes of punctuation and wording have been made.

affidavit, and others that had been established on the earlier motion were highlighted. I concluded, on the basis of the new information and the old information revisited, that Mr. Thompson had not known of the demand for retraction before litigation ensued, and that, under the corporate arrangements in force in the Westinghouse system, a decision to retract would not be within the purview of a station manager.

In the light of that, I concluded that I had been in error before. My determination, as I gave it from the bench on January 15, 1988, was as follows:

I grant the motion to reconsider my order of remand, and on reconsideration I conclude that that order should be vacated and the motion to remand denied.

Again, through the prism of Judge Gerry's opinion, [*American Dredging Co. v. Atlantic Sea Con, Ltd.*, 637 F.Supp. 179, 183 (D.N.J.1986)], I now conclude "that there is no possible basis for imposing liability on the non-diverse defendant," namely Mr. Thompson. Therefore, the joinder of Mr. Thompson is improper, and the diversity jurisdiction of this court comprehends the lawsuit of Officer Coughlin against Westinghouse.

Transcript at 14.

Subsequent to that determination, Officer Coughlin moved to supplement his complaint. That motion operates as a vehicle to call upon me to reconsider my decision vacating the prior order of remand. The motion to supplement the complaint requests court permission to make the following allegations:

One, defendant Thompson (even if it is assumed arguendo that he was insulated by his attorney from receipt of the September 30, 1986, retraction demand letter), did in fact become aware of and read that letter after service of the first complaint and still declined to issue a retraction.

Two, the determination, alleged by defendants, to refuse to present Mr. Thompson with the September 30, 1986 letter was a knowing and deliberate act by the defendant Westinghouse, and the attorneys for defendants Westinghouse

and Thompson. The attorney for all the named defendants was asked in writing specifically to inform plaintiff's counsel in the event he, as the attorney, would not accept service of the letter on Mr. Thompson. Defendants' counsel did not inform plaintiff's counsel that he refused to let Mr. Thompson read the letter. Indeed, the letter refusing a retraction made no mention of any refusal to provide the plaintiff's letter to defendant Thompson. The complaint was filed following receipt of the letter from defendants' attorney refusing to retract and without any knowledge by plaintiff of the alleged refusal to provide a copy of the letter to Mr. Thompson.

Three, as may be inferred from the limitation in Westinghouse's original affidavits and directly from evidence of the duties of Mr. Thompson's predecessor, the general manager of KYW–TV3 possesses substantial authority to make a retraction. Any alleged decision of Westinghouse officers or legal counsel to divest the station manager of that authority in this case further establishes negligent and/or intentional conduct to injure the plaintiff's rights as previously alleged in the complaint.

Four, each of the named defendants thus acted in knowing and reckless disregard of the truth by refusing to retract (regardless of whether they knew of such falsity at the time of broadcast) and have also by this conduct inflicted emotional distress upon the plaintiff.

It is plaintiff's submission that amending his complaint in the manner proposed will make it plain that a claim is properly directed at Mr. Thompson. The critical supplementary allegations would be those which state that Mr. Thompson "did in fact become aware of and read that letter after service of the first complaint and still declined to issue a retraction," and that "the general manager of KYW–TV3 possesses substantial authority to make a retraction."

As to the latter allegation, it is plaintiff's position that my determination to the contrary, namely that the question of a retraction *vel non* is a question for the law

department, and not within the purview of a general manager, is a finding made in a context in which plaintiff, not having had the benefit of discovery, was not in any position to resist the force of the defendant Westinghouse's affidavits. The fact is, of course, that there has not been discovery on the issue of authority as between a station manager and the law department to determine retraction.

In my prior ruling, I concluded that the affidavit reciting that authority lay not in the station manager, but in the law department of Westinghouse, confirmed what logic instructs must be expected to be the prevailing situation. To the extent that we are talking about a circumstance in which litigation has commenced, it would seem almost inconceivable that a decision to retract could be made by a subordinate official without clearance from counsel representing that subordinate official and his employer. That seems to be the scenario that plaintiff has in mind in contending, as I understand the contention, that supplementation of the complaint to include the allegation that Mr. Thompson read the letter of demand for retraction *on receiving a copy of the complaint*, at that point put him, Thompson, in a posture where he was aware that a demand for retraction had been made, and could exercise what plaintiff alleges is his residual authority to make such a retraction on his own.

While discovery on an issue of the kind presented here might ordinarily be appropriate, I find it very hard to imagine what could be discovered that would substantiate the rather extraordinary proposition that after the inception of litigation this subordinate official could take from his superiors and their lawyers the authority to decide how to meet the claim made jointly against Westinghouse and himself. However, I don't think that speculation is something that I need to pursue.

If I assume that the complaint is supplemented to incorporate the first claim, that Mr. Thompson "did in fact become aware of and read that letter after service of the first complaint and still declined to issue a retraction," I would then be in a position to consider whether what was now alleged was a cognizable claim against Mr. Thompson for failure to retract, when linked with the assertion in supplementary paragraph three that a station manager has such authority.

My understanding of plaintiff's theory is that Mr. Thompson became obligated to make a retraction as of the moment that, by reading the letter *appended to the complaint*, he learned that a retraction had been demanded. If it is also a part of plaintiff's claim that in some fashion Mr. Thompson was under an obligation to retract before he had read the letter making such a demand, but after that letter had been received by other Westinghouse officials, including Westinghouse lawyers who undertook to keep that letter from him, I have no hesitation in concluding that neither the courts of Pennsylvania, nor any other courts known to the Anglo–American system, would impose personal liability on Mr. Thompson for failing to do something he had not been apprised that he had been asked to do. Due process has it claims.

If then I understand plaintiff's claim to be the more limited one I outlined a few moments ago, namely that the supplementary allegations support a claim that as of the moment Mr. Thompson, in fact, read the letter demanding retraction, a claim accrued as against him, then what we have is a circumstance in which a pleading which, in the first instance, undertook to state a claim against Westinghouse—which unquestionably did know that it had been asked to retract—is now to be enlarged to include a subsequently accruing claim against Mr. Thompson. The subsequent accrual would be at a time after the filing of the complaint in the Court of Common Pleas.

■ What we have then conceptually before this court now is, it seems to me, something qualitatively different from a proposal to supplement a complaint to add allegations enlarging verisimilitude and relating back to a claim originally filed. What we have conceptually is a situation in which a claim properly filed—assuming it can be made out on the merits against one

defendant—is sought to be expanded by adding another defendant. When that takes place in the context of an action in a federal court—when this action has, after initiation in the Court of Common Pleas, come to the federal court by removal—what we have is a situation which falls within the following rule governing in this Circuit:

> When a plaintiff seeks to force remand of a properly removed case by the addition of a non-diverse defendant, the appropriate inquiry is whether that proposed defendant is indispensable under Rule 19. *E.g., Takeda v. Northwestern Nat'l Life Ins. Co.,* 765 F.2d 815, 819 (9th Cir.1985); *Kaib v. Pennzoil Co.,* 545 F.Supp. 1267, 1270 (W.D.Pa.1982). This more stringent inquiry supports "the long-settled (and salutary) policy that a plaintiff cannot artificially force a retreat to the first (state) forum by embarking purposefully on post-removal steps designed exclusively to foster remand." *Adorno Enter. [Inc. v. Federated Dept. Stores, Inc.],* 629 F.Supp. [1565] at 1570 [ (D.C.R.I.1986) ].

*Steel Valley Authority v. Union Switch and Signal Division,* 809 F.2d 1006, 1012, n. 6 (3d Cir.1987), *cert. dismissed,* — U.S. —, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988).

Since Mr. Thompson is by no stretch of the imagination an indispensable party under Rule 19, that is to say since this action can very properly proceed against Westinghouse alone, the motion to file a supplementary complaint is denied.

■ We turn next to a motion for this court to abstain, which is plaintiff's motion, and the earlier motion of the defendants to dismiss. The motion to dismiss asserts a number of dispositive claims. It relies on principles of *res judicata,* the statute of limitations, the dictates of the Uniform Single Publication Act, the substantive non-existence of the claimed cause of action of retraction in Pennsylvania law, and the contention that, were there such a cause of action, it would violate the First Amendment as incorporated in the Fourteenth Amendment.

The motion for abstention asks that I refrain from deciding in the first instance whether the claimed cause of action, namely that there is a duty on a defamer to retract when the falsity of the defamation is brought home to the defamer, exists under Pennsylvania law.

Plaintiff recognizes that what it contends for is a novel cause of action. Plaintiff contends that the cause of action is derivable from, and should be derived from, and will by the courts of Pennsylvania be derived from, state constitutional provisions, most particularly Article 1, Section 11, which provides that "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay," and Article I, section 7, which provides that "The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of Government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty."

On the basis of these venerable—and they are venerable—constitutional provisions, Officer Coughlin contends that the courts of Pennsylvania can and will generate a cause of action which, it is acknowledged, has not been recognized, though it also has not been disavowed, in Pennsylvania up to this time. Because the claim is novel under state law, plaintiff contends that it is particularly appropriate that a federal court defer to state judicial authority to determine whether there is such a cause of action.

The defendants—and I now amend that to mean defendant since I have again determined that this lawsuit is to proceed here just between Mr. Coughlin and Westinghouse, and without Mr. Thompson—take the position that the general proposition, that this is a novel matter of state law, doesn't warrant abstention, and take the

further position that it would be particularly inappropriate to abstain under a circumstance in which the proposed new cause of action would raise very large and, in defendant's view, defeating federal constitutional issues: "defeating," that is, in the sense that the mandate of the First Amendment would preclude any such new substantive claim under Pennsylvania law.

The basic reliance of plaintiff in seeking abstention is the Supreme Court's decision in *Louisiana Power & Light Co. v. Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), where a divided Court did affirm the discretionary determination of a federal district court which abstained in favor of a state court's initial determination with respect to a complex and esoteric problem of Louisiana law. The decision to abstain there, Justice Frankfurter made clear, was predicated on the very special character of the issue of local law, eminent domain, and the fact that it arose in a context in which what was largely at issue was the governing authority of a Louisiana city, as against the State of Louisiana. The federal court found itself, Justice Frankfurter noted, caught between the wording of an old but uninterpreted statute, and a contrary sounding opinion of the State Attorney General.

Under that set of highly unusual circumstances, Justice Frankfurter for the majority concluded that abstention was within the discretion of the district court, a discretionary determination which the Court of Appeals had overturned. There was a strong dissent by Justice Brennan, joined by Chief Justice Warren and Justice Douglas. I find no basis in *Thibodaux* itself, or in the diversity cases that have followed *Thibodaux* in which the question of abstention has arisen, that would warrant abstention here. There is nothing esoteric about the issue presented. Indeed, it is the novelty of the claim, not its remoteness or entanglement with some arcane Pennsylvania jurisprudence, which characterizes it.

So I deny the motion to abstain.

I turn to the motion to dismiss. There is a claim of *res judicata*. And there is a claim under the Uniform Single Publication Act that all torts hinging on a particular publication should be treated as one and located in one action.

Upon consideration, I think it would be apparent that there is a sameness about those positions. The very question to be determined is whether the courts of Pennsylvania would find that there is here a separate cause of action, and one that arises not from the original, arguably defamatory—but demonstrably not malicious—publication, but which rests on a subsequent and discrete event, or continuing series of events, non-retraction, after the asserted defamer has been sufficiently educated to the falsity of what was originally published.

By the same token, the statute of limitations claim—which contends that whatever cause of action there might have been accrued at the time of publication, in this instance the 1982 broadcast—tracks essentially the same ground.

■ So I will put those defenses aside and go to the question which is the central question, whether the Pennsylvania courts would find a cognizable claim in Pennsylvania jurisprudence.

Counsel have not been able to come up with any case in any American jurisdiction which recognizes a claim sounding in damages for failure to retract what is defamatory. There are two California cases, which counsel have discussed, both of which have denied that there is such a cause of action in California. *Kaplan v. Newsweek*, 10 Med.L.Rptr. 2142 (N.D.Ca. 1984) *aff'd per curiam* 12 Med.L.Rptr. 1277 (9th Cir.1985); *Beasley v. Hearst Corp.*, 11 Med.L.Rptr. 2067 (Ca.Super. 1985). California is a jurisdiction which has the Uniform Single Publication Act. California is also a jurisdiction that has some part of Pennsylvania's constitutional armory. Article 1, section 2 of the California Constitution provides that "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." I do not think that the California Constitution has any language

which tracks or closely parallels the Article 1, section 11 language which Officer Coughlin particularly relies on. I have in mind the language, "Every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

It is defendant's position that there is no such right under Pennsylvania law, and that there could not be, because to direct a newspaper or television station or other publisher, that failure to retract what it knows to be defamatory and false would leave it open to a damage verdict, would contravene principles that are established by the Supreme Court as inhering in the First Amendment, and which preclude giving directions to anybody as to what to publish.

Particular authority heavily relied on for this proposition is *Miami Herald Publishing Company, Division of Newspapers, Inc. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974), in which the Court, speaking through Chief Justice Burger, held unconstitutional a Florida statute giving a political candidate a right of reply in a newspaper's column to material critical of the candidate.

There is language in the Court's opinion which certainly gives substance to the constitutional position of the defendant. I think that language has to be measured against the following concurring language of Justice Brennan, joined by Justice Rehnquist:

I join the Court's opinion which, as I understand it, addresses only "right of reply" statutes and implies no view upon the constitutionality of "retraction" statutes affording plaintiffs able to prove defamatory falsehoods a statutory action to require publication of a retraction. *See generally* Note, *Vindication of the Reputation of a Public Official,* 80 Harv.L.Rev. 1730, 1739–47 (1967).

418 U.S. at 258–259, 94 S.Ct. at 2840.

This careful reservation by the author of *New York Times v. Sullivan,* leads me to conclude that the constitutionality of retraction statutes is an entirely open issue,

not prejudiced by the determination in *Miami* at all. My view of the matter is that a carefully crafted retraction statute could well be constitutional. Without undertaking to spell out the details of such a statute, I would simply say that the crux of constitutionality would be to make certain that the liability of the alleged defamer to make retraction would be contingent on— as a predicate—a full demonstration to the defamer of the falsity of the alleged defamation. That predicate would mean that the threshold of malice or reckless indifference to truth or falsity, which is the hinge of *New York Times v. Sullivan* and subsequent cases, would be met.

I do not see as a general matter that there is any unconstitutionality about telling a defamer who, by hypothesis, can be regarded as acquiescing in, or at least by law being forced to recognize, that what has been published has been falsely defamatory—by requiring that defamer to respond in damages, if the defamer is unwilling to retract.

The concurrence of Justice Brennan, as I've noted, referred to the discussion of retraction statutes in volume 80 of the *Harvard Law Review.* The summary of the 1973 Supreme Court Term which appeared in volume 88 of the *Harvard Law Review* referred in the following language to this aspect of *Miami Herald:*

*Miami Herald* does not, however, foreclose all methods of expanding access to the press. Although the text of the opinion appears to prohibit a requirement that newspapers publish a retraction after a defamation has been adjudicated, Justice Brennan's brief concurrence suggested that the Court's decision did not necessarily invalidate retraction statutes. An interpretation of *Miami Herald* which makes compulsory access only presumptively unconstitutional could permit retraction statutes to be upheld if the important state interest in promoting the vindication of personal reputation were deemed sufficiently compelling.

*The Supreme Court, 1973 Term—Leading Cases,* 88 Harv.L.Rev. at 179–80 (1974) (footnotes omitted).

Assuming for purposes of argument the correctness of my view, that a properly

drafted retraction statute would resist constitutional challenge, I conclude that there is no likelihood whatsoever that the courts of Pennsylvania, including the Supreme Court, would fashion a retraction cause of action for themselves. Granted that the constitutional provisions relied on by Officer Coughlin, most particularly Article 1, Section 11, bespeak a strong Pennsylvania interest in the preservation of reputation within federal constitutional constraints, I'm entirely confident that the courts of Pennsylvania would conclude that the mode of protecting that reputation interest by the retraction mechanism must be accomplished by the legislature through an appropriately developed statute.

In that connection, I would point out that the Pennsylvania legislature has undertaken to provide by statute for numerous facets of actions sounding in defamation. The Uniform Single Publication Act, to which reference has been made, is only one of those facets. The statute of limitations relating to defamation actions is another. The contours of a defamation action in Pennsylvania have been stated by the legislature. And all these are matters of relatively recent legislative attention.

It seems to me that against that background it would be highly improbable that the Pennsylvania Supreme Court would contemplate that the judiciary should construct a cause of action in Pennsylvania which is not known in any other American jurisdiction.

With that in mind, I conclude that the motion to dismiss of defendant Westinghouse should be granted. I will enter an order which so determines for the reasons that I've given today from the bench.

This disposition of the motion to dismiss, and of the prior motions which I've discussed—the motion for abstention and the motion for leave to file a supplementary complaint—makes it unnecessary to consider the motion for protective order, which is moot.