**Herman B. PARSONS, Plaintiff,**

v.

**Robert J. WATSON, in his official capacity as Commissioner of the Delaware Department of Corrections, Defendant.**

Civ. A. No. 90–142 MMS.

United States District Court,
D. Delaware.

Aug. 12, 1991.

Roy S. Shiels of Brown, Shiels & Chasanov, Dover, Del., for plaintiff.

Lawrence H. Lewis, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendant.

David L. Finger of Richards, Layton & Finger, Wilmington, Del., for movant.

## MEMORANDUM OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

This is a motion to quash a subpoena filed by Carolyn Lewis ("Lewis"), a reporter for the Wilmington News Journal and a non-party. Lewis asserts the "reporter's privilege" as the basis for her motion to quash. The applicability of the reporter's privilege must be analyzed on a case-by-case basis in light of the facts and circumstances presented. *Branzburg v. Hayes,* 408 U.S. 665, 710, 92 S.Ct. 2646, 2671, 33 L.Ed.2d 626 (1971) (Powell, J., concurring); *Coughlin v. Westinghouse Broadcasting & Cable Inc.,* 780 F.2d 340, 358 (3d Cir. 1985) (Becker, J., concurring), *cert. denied,* 476 U.S. 1187, 106 S.Ct. 2927, 91 L.Ed.2d 554 (1986); *Riley v. City of Chester,* 612 F.2d 708, 716 (3d Cir.1979). Consequently, a discussion of the underlying case is necessary to a determination of the motion to quash presently before the Court.

Plaintiff is a former Captain in the Delaware Department of Corrections (the "Department"). On July 5, 1987, remarks critical of the Department and attributed by Lewis to plaintiff were reported in a newspaper article published in the Wilmington News Journal. These remarks were reportedly made during the course of a July 1, 1987 conversation among plaintiff and three others in the employ of the Department at which Lewis was present. Plaintiff asserts he was formally disciplined and his rank reduced to Staff Sergeant because of the remarks attributed to him in the July 5, 1987 Wilmington News Journal article.[1] Plaintiff has brought suit against defendant in his official capacity as Commissioner of the Department of Corrections alleging various state and federal constitutional violations, including, most pertinently, violations of plaintiff's freedom of speech under the First Amendment. Plaintiff seeks

reinstatement to his former rank with back pay.

Apparently, one of the defenses which defendant will assert is that the statements made by plaintiff and published in the Wilmington News Journal were false, and plaintiff has no First Amendment right to disseminate false information about the Department. *See* Dkt. 27; Dkt. 28. While plaintiff does not deny that he participated in a discussion critical of the Department in the presence of reporter Lewis, he asserts that many of the remarks attributed to him by Lewis in the July 5, 1987 newspaper article were reported inaccurately. In other words, plaintiff asserts he did not disseminate false information but rather was misquoted.

In support of his assertion, plaintiff caused to be issued to Lewis a subpoena for the purpose of deposing her on March 19, 1991 to determine whether "(1) the contents of certain statements quote[d] in the article, or the identity of the speakers, is reflected accurately in the article, and (2) to determine whether later articles were intended to correct the earlier [July 5, 1987] article, which Parsons claims included inaccurate reporting of his comments." Dkt. 23. Parsons' attorney attempted to clarify the purpose of the subpoena at oral argument. It is plaintiff's contention that a second article, written by Lewis and published in the Wilmington News Journal on July 8, 1987, was intended to correct misquotations in the July 5, 1987 article. Parsons asserts that Lewis' testimony will support his assertion that the July 8, 1987 article was written and published because the July 5, 1987 article did not accurately reflect Parsons' statements during the July 1, 1987 conversation. Despite the assertion by Parsons' counsel that the subpoena does not seek testimony as to the substance of the July 1, 1987 conversation, it is apparent that Parsons continues to seek from Lewis, albeit in an oblique fashion, substantiation of Parsons' version of the conversation reported in the July 5, 1987 article.

---

**1.** The Wilmington News Journal published related articles, dated July 8 & 9, 1987 detailing the actions taken against plaintiff.

Lewis moved to quash the subpoena on the basis of the reporter's privilege. The Magistrate–Judge entered an order on March 19, 1991 staying the deposition pending review by the Court of the motion to quash. Dkt. 26. Having considered the positions of all parties as stated in writing and at oral argument held August 7, 1991, the Court will grant Lewis' motion to quash the subpoena issued to her.

Federal Rule of Evidence 501 provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

The deposition testimony sought by plaintiff is alleged to be relevant to his federal constitutional claim. Consequently, the asserted privilege is governed by principles of federal law. *von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 141 (2d Cir.), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Riley,* 612 F.2d at 714.

The so-called "reporter's privilege" finds its roots in the United States Supreme Court's acknowledgement in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), that there exists a First Amendment protection for newsgathering. The import of *Branzburg* is unclear at best. As one court recently described the First Amendment jurisprudence arising from the *Branzburg* decision:

[T]he variety of interpretations of *Branzburg* is astonishing. Thus, some courts state that *Branzburg* stands for the proposition that reporters enjoy no

*absolute* immunity before a criminal grand jury. *See, e.g., von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 142 (2d Cir.), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Continental Cablevision, Inc. v. Storer Broadcasting Co.,* 583 F.Supp. 427, 432 (E.D.Mo.1984). At least one other court has paraphrased the holding of the *Branzburg* case in an affirmative manner which contrasts with the characterization in *von Bulow* and *Continental Cablevision,* but does not contradict that characterization. That court stated that *Branzburg* stands for the proposition that reporters *do* enjoy a *qualified* immunity before a criminal grand jury. *See Pinkard v. Johnson,* 118 F.R.D. 517, 520 (M.D.Ala.1987). Yet a third breed conceives of *Branzburg* as indicating that reporters are not entitled to even a *qualified* immunity before a criminal grand jury. *See, e.g., O'Neill v. Oakgrove Const., Inc.,* 71 N.Y.2d 521, 528, 528 N.Y.S.2d 1, 4, 523 N.E.2d 277, 280 (1988); *Reporters Comm. for Freedom of the Press v. American Telephone & Telegraph Co.,* 593 F.2d 1030, 1062 n. 107 (D.C.Cir.1978), *cert. denied,* 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979).

*United States v. Markiewicz,* 732 F.Supp. 316, 318 (N.D.N.Y.1990) (emphasis in original).

This confusion likely arises from the fact that *Branzburg* was a 5–4 decision in which the fifth and deciding vote was provided by Justice Powell, who wrote a separate concurrence. The position of the four other Justices in the majority regarding the existence and extent of a privilege for journalists is unclear. While the majority opinion acknowledged that "news gathering is not without its First Amendment protections," *Branzburg,* 408 U.S. at 707, 92 S.Ct. at 2670; *see also id.* at 681, 92 S.Ct. at 2656, the holding in the case required certain journalists to disclose to a grand jury the identities of people to whom the journalists had promised anonymity. Indeed, the majority appeared disinclined to approve a testimonial privilege for journalists. *Id.* at 702–06, 92 S.Ct. at 2667–69.

The four dissenters, on the other hand, favored some sort of privilege.

Justice Powell, who provided the crucial fifth vote, advocated a case-by-case approach:

> Indeed, if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationships without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered. The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions.

*Id.* at 710, 92 S.Ct. at 2671 (Powell, J., concurring).

In light of this confusion, the Court must look for guidance to the interpretation of *Branzburg* developed by the Third Circuit Court of Appeals. The Third Circuit Court of Appeals, adopting the case-by-case approach advocated by Justice Powell, has held that journalists possess a qualified privilege arising under Fed.R.Evid. 501 to refuse to divulge a confidential source. *Riley,* 612 F.2d at 715; *see also United States v. Criden,* 633 F.2d 346, 355 (3d Cir.1980), *cert. denied sub nom. Schaffer v. United States,* 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981); *United States v. Cuthbertson,* 630 F.2d 139, 146 (3d Cir. 1980), *cert. denied sub nom. Cuthbertson v. CBS, Inc.,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). The privilege has not, however, been limited to disclosure of confidential sources. The appellate court has held that the privilege applies when a party seeks to compel production of unpublished information or of a reporter's resource materials. *Cuthbertson,* 630 F.2d at 147.[2] Other courts have held that the privilege and the First Amendment concerns underlying the privilege are implicated where a party seeks to compel a journalist to authenticate or verify published quotations. *Markiewicz,* 732 F.Supp. at 319; *National Labor Relations Board v. Mortensen,* 701 F.Supp. 244, 246–47 (D.D.C.1988); *United States v. Blanton,* 534 F.Supp. 295, 297 (S.D.Fla.1982).

The reporter's privilege recognized by the Third Circuit Court of Appeals is a qualified privilege and may be transcended in a particular case by countervailing interests. *Riley,* 612 F.2d at 715.[3] In order to overcome the qualified privilege, the party seeking to compel a journalist's testimony must establish the materiality, relevance, and necessity of the testimony sought. *Criden,* 633 F.2d at 358; *Riley,* 612 F.2d at 716. The party can make this showing by satisfying three criteria: (1) the testimony sought is crucial to the case; (2) the party has made an effort to obtain the needed information from alternative sources; and (3) the only access to the information sought is through the journalist's testimony. *Criden,* 633 F.2d at 358–59.

Other factors affect the kind of showing necessary to overcome the qualified privilege. For example, the party seeking the testimony of a journalist must make a stronger showing to compel disclosure of

---

2. Although the appellate court in *Criden* found that countervailing interests outweighed the reporter's privilege in that case, the fact that the court applied the analysis developed in *Riley* implies the court believed the situation in *Criden*—where a party sought only for a journalist to affirm or deny whether a conversation took place and whether arguably relevant matters were discussed—implicated the First Amendment concerns which give rise to the qualified privilege.

3. When no countervailing constitutional concerns are at stake, it can be said that the privilege is absolute; when constitutional precepts collide, the absolute gives way to the qualified and a balancing process comes into play to determine its limits. Thus, there are sound reasons for safeguarding the qualified privilege within the limits dictated by the purposes it serves.
*Criden,* 633 F.2d at 356.

confidential material or the identity of a confidential source than to obtain disclosure of non-confidential information. *Id.* at 358 ("[D]efendants probably should be required to prove less to obtain the reporter's version of a conversation already voluntarily disclosed by the self-confessed source than to obtain the identity of the source itself"); *see also United States v. La Rouche Campaign,* 841 F.2d 1176, 1181 (1st Cir.1988) (noting that it is more difficult to establish policy grounds for the privilege when no confidential information is sought); *Markiewicz,* 732 F.Supp. at 319 (lesser showing of need and materiality required to obtain non-confidential information); *Mortensen,* 701 F.Supp. at 248 (same).

The courts may also require a stronger showing in civil cases than in criminal cases because the important constitutional rights possessed by criminal defendants present significant countervailing interests weighing against the interest of the journalist in preventing disclosure. *See Criden,* 633 F.2d at 358. Conversely, the courts may require a lesser showing where the journalist is a party to the lawsuit rather than a third-party witness. *See Zerilli v. Smith,* 656 F.2d 705, 714 (D.D.C.1981).

■ With these principles in mind, the Court now turns to the motion before it. Plaintiff does not seek from Carolyn Lewis the identities of any confidential sources. Rather, he seeks to establish that Lewis reported inaccurately in the July 5, 1987 article statements made by plaintiff, and that she attributed to plaintiff statements made by others. In other words, plaintiff seeks to verify his assertion that the July 1, 1987 conversation was reported inaccurately in the July 5, 1987 article. This case, therefore, is similar to the *Blanton, Markiewicz,* and *Mortensen* cases, in which verification of statements quoted in published articles was sought. While the Court agrees with the court in *La Rouche*

*Campaign,* 841 F.2d at 1181, that it is more difficult to identify the First Amendment interest at stake when a reporter is not asked to reveal confidential information, the Court nevertheless believes that the privilege is available even when confidential information is not sought.[4] Rather, "the lack of a confidential source may be an important element in balancing the defendant's need for the material sought against the interest of the journalist in preventing production in a particular case." *Cuthbertson,* 630 F.2d at 147. The Court finds that Carolyn Lewis possesses a First Amendment interest, albeit a somewhat lesser interest than that possessed by a journalist seeking to prevent disclosure of a confidential source. Lewis' interest must be weighed against the competing interests of the parties[5] to determine whether the reporter's privilege is available to her.

■ The first criteria which must be satisfied in order to overcome Lewis' qualified privilege is that Lewis' testimony is crucial to the case. As stated previously, defendant plans to assert that the statements attributed to plaintiff were false and therefore not protected by the First Amendment. In response, plaintiff asserts that he did not utter any of the allegedly false statements attributed to him by Lewis in the July 5, 1987 article. Without benefit of briefing by the parties, the Court declines to rule on the legal sufficiency of the asserted defense. Although the factual record has not been fully developed, it appears that the statements in the July 5, 1987 article formed the basis for the disciplinary action against plaintiff and that plaintiff denies making the statements attributed to him. Consequently, it appears that the accuracy of the reporting reflected in the July 5, 1987 article will be a significant issue in this litigation. However, while Lewis' testimony may therefore be relevant to the issues in the case, it is not crucial because Lewis is not the only

---

**4.** The Court notes as an aside that the court in *La Rouche Campaign* nevertheless found that there was "some merit" to the First Amendment interests asserted in that case. *La Rouche Campaign,* 841 F.2d at 1182.

**5.** Although plaintiff actually caused the subpoena to issue, defendant has indicated that he would likely subpoena Lewis as a trial witness to testify as to the accuracy of her reporting. Dkt. 28.

source of this information. There were four participants—Robert C. Waishes, Stanley L. Bunting, Theodore P. Irvin, Jr., and plaintiff—in the conversation reported by Lewis. Amended Complaint ¶ 7 (Dkt. 6). Plaintiff has not made any showing that he cannot obtain information regarding the accuracy of the statements attributed to him in the July 5, 1987 article from one or more of the other three participants in the conversation. Moreover, plaintiff himself is a source of information regarding exactly what was said during the conversation. Lewis' testimony, while relevant, would be cumulative of the testimony of the participants in the conversation.

For the same reason, plaintiff fails to satisfy the other prongs of the test. In order to overcome Lewis' qualified privilege, the plaintiff must also demonstrate that he has made an effort to obtain evidence as to the accuracy of the reporting of the conversation from sources other than the journalist and that his only access to the information he seeks is through the testimony of Lewis. The most logical source of information about a conversation is a participant or someone who was present during the conversation. *Criden,* 633 F.2d at 359; *Mortensen,* 701 F.Supp. at 249. Consequently, Lewis is a logical source of information as to exactly what plaintiff said in the reported conversation. As previously stated, Lewis is not the only source and plaintiff has not shown that he cannot obtain evidence as to the accuracy of the July 5, 1987 article from the other participants in the conversation.

While the fact that no confidential information is sought somewhat lessens the showing necessary to overcome the reporter's privilege in this case, the mere conclusory assertions of plaintiff that he is entitled to compel Lewis' testimony are insufficient. *See Riley,* 612 F.2d at 717. When there is a clear alternative source for the information sought, the journalist may invoke the privilege to avoid compelled testimony. *United States v. Caporale,* 806 F.2d 1487, 1504 (11th Cir.1986), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 763 (1987) and *cert. denied sub nom. Gopman v. United States,* 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987); *Mortensen,* 701 F.Supp. at 248. Such an alternative source exists in this case.

An order will be entered granting Lewis' motion to quash the subpoena.