No. 95-2347EA

Catherine Edgerson, on Behalf     *
of Joe N. Edgerson, Jr., Hazel    *
R. Edgerson and Jarred J.         *
Edgerson; Jarred J. Edgerson;     *
Hazel R. Edgerson; Joe N.         *
Edgerson, Jr.,                    *
                                  *
          Plaintiffs-Appellants,* 
                                  *
     v.                           *
                                  *
Bill Clinton, Governor of         *
the State of Arkansas,            *
Individually; Burton Elliott,     *
Director of the Arkansas State    *
Department of Education,          *
Individually; Rae Rice Perry,     *
Member of the Arkansas State      *
Board of Education,               *
Individually; James McLarty,      *
Member of the Arkansas State      *
Board of Education,               *
Individually; L. D. Harris,       *
Member of the Arkansas State      *   Appeals from the United States
Board of Education,               *   District Court for the Eastern
Individually; Richard Smith,      *   District of Arkansas.
Member of the Arkansas State      *
Board of Education,               *
Individually; Elaine Scott,       *
Member of the Arkansas State      *
Board of Education,               *
Individually; Walter Turnbow,     *
Member of the Arkansas State      *
Board of Education,               *
Individually; Nancy Wood,         *
Member of the Arkansas State      *
Board of Education,               *
Individually; Star City           *
Arkansas School District No.      *
11, Board of Education; Gould      *
Arkansas School District, Board   *
of Education, A Public Body       *
Corporate; Grady Arkansas         *
School District, Board of         *
Education, A Public Body          *
Corporate; Dumas Arkansas         *
School District, Board of         *

```
Education, A Public Body          *
Corporate; Lincoln County,        *
Board of Education, A Public      *
Body Corporate,  *
                                  *
          Defendants-Appellees.   *
```

_____

No. 95-2667EA
_____

```
Catherine Edgerson, on Behalf     *
of Joe N. Edgerson, Jr., Hazel    *
R. Edgerson and Jarred J.         *
Edgerson; Jarred J. Edgerson;     *
Hazel R. Edgerson; Joe N.         *
Edgerson, Jr.,                    *
                                  *
          Plaintiffs-Appellees,   *
                                  *
     v.                           *
                                  *
Bill Clinton, Governor of the     *
State of Arkansas, Individually;*
Burton Elliott, Director of the   *
Arkansas State Department of      *
Education, Individually; Rae      *
Rice Perry, Member of the         *
Arkansas State Board of           *
Education, Individually; James    *
McLarty, Member of the            *
Arkansas State Board of           *
Education, Individually; L. D.    *
Harris, Member of the             *
Arkansas State Board of           *
Education, Individually;          *
Richard Smith, Member of the      *
Arkansas State Board of           *
Education, Individually; Elaine   *
Scott, Member of the Arkansas     *
State Board of Education,          *
Individually; Walter Turnbow,     *
Member of the Arkansas State      *
Board of Education,               *
Individually; Nancy Wood,         *
Member of the Arkansas State      *
Board of Education,               *
Individually; Star City           *
Arkansas School District No. 11 *
Board of Education;               *
                                  *
```

-2-

                Defendants-Appellees,     *
                                          *
Gould Arkansas School District            *
Board of Education, A Public              *
Body Corporate;  *
                                          *
                Defendant,                *
                                          *
Grady Arkansas School District            *
Board of Education, A Public              *
Body Corporate;  *
                                          *
                Defendant-Appellant,      *
                                          *
Dumas Arkansas School District            *
Board of Education, A Public              *
Body Corporate;  *
                                          *
                Defendant-Appellee,       *
                                          *
Lincoln County Board of                   *
Education, A Public Body                  *
Corporate,       *
                                          *
                Defendant.                *
                                 _____

                    Submitted:  April 10, 1996

                     Filed:  June 21, 1996
                                 _____

Before McMILLIAN and FAGG, Circuit Judges, and BURNS,[*] District
      Judge.
                                 _____

FAGG, Circuit Judge.

      Catherine Edgerson and her three school-aged children, residents of
the Gould School District in Lincoln County, Arkansas, brought this lawsuit
against the Gould School District; the neighboring Grady, Star City, and
Dumas School Districts; the Lincoln County School Board; and various state
officials

_____

      *The HONORABLE JAMES M. BURNS, United States
      District Judge for the District of Oregon, sitting
      by designation.

                             -3-

responsible for the Arkansas public education system.  Edgerson asserted the defendants intentionally caused the school districts to become racially segregated, in violation of the Fourteenth Amendment's Equal Protection Clause and 42 U.S.C. §§ 1981, 1983, and 2000(d).  See Brown v. Board of Educ., 347 U.S. 483, 495 (1954).  As a remedy, Edgerson requested consolidation of some of the districts, or the creation of magnet schools and other programs to improve the racial balance among the districts and eliminate racial disparities.  Each defendant filed cross-claims asserting that if segregation had occurred, the other defendants were to blame.  Following a bench trial, the district court entered judgment for the defendants on Edgerson's claim, and dismissed the cross-claims.  Edgerson appeals, and the Grady School District appeals the dismissal of its cross-claims.  We affirm.

As an initial matter, we deny the Dumas School District's motion seeking dismissal from this appeal.  Contrary to Dumas's view, Edgerson's failure to name Dumas as an appellee in her notice of appeal did not violate Federal Rule of Appellate Procedure 3(c).  Thomas v. Gunter, 32 F.3d 1258, 1262 (8th Cir. 1994).  Finding no procedural error, we turn to the merits.

Most of the relevant facts are undisputed.  During the first half of this century, each school district in this appeal operated one school system for white students and a separate school system for black students, as Arkansas law required.  Ark. Stat. Ann. § 80-509(c) (1980) (repealed 1983).  After the United States Supreme Court rejected the "separate but equal" doctrine in 1954, see Brown v. Board of Educ., 347 U.S. at 495, the State of Arkansas actively opposed desegregation and delayed the elimination of the dual school system for many years.  The school districts finally merged their black and white schools during the late 1960s and early 1970s.  Since then, the Gould and Grady districts have had a large majority of black students.  The Dumas district is also predominantly black, but to a lesser extent than Gould or Grady,

and Star City is a mostly white district.

Arkansas has several laws that allow students to attend school outside the districts where they reside. One of the laws, known as the Sibling Act, was passed in 1983. The Sibling Act permits students who were attending school outside their resident district during the 1982-83 or 1983-84 school years, and all of the students' current or future siblings, to continue attending the same school. Ark. Code Ann. § 6-18-205(a)(1) (Michie 1993). Arkansas also has a statute that permits students to transfer from their resident school district to a different district with the consent of both districts and the county school board (the transfer statute). Id. § 6-18-316. In 1987, the Arkansas Legislature limited the use of the transfer statute by prohibiting transfers that adversely affect the racial balance in a school district that is or has been under a court desegregation order. Id. § 6-18-317. Both Gould and Grady have been subject to desegregation orders in the past. Raney v. Board of Educ., 391 U.S. 443, 447-48 (1968) (Gould); Carthan v. Board of Educ., No. PB 68-C-35 (E.D. Ark. filed Apr. 20, 1971) (unpublished consent decree) (Grady).

Before the 1987 restriction on transfers, all four school districts and the Lincoln County Board of Education routinely granted transfer applications. Between 1971 and 1985, 84 students transferred from Grady to Star City; 27 students transferred from Gould to Star City; and 100 transferred from Gould to Dumas. Over 90% of the transferring students were white. Gould and Grady stopped granting transfers in 1987. The State Board of Education later asked Gould and Grady to review the transfers granted in earlier years because the transfers might have upset the districts' racial balance. In response, Gould and Grady revoked all transfers effective 1991. For reasons that are disputed, not all of the transfer students from Grady returned to the Grady schools. In addition to the transfers, students covered by the Sibling Act have attended school outside their resident districts as a matter of

right, usually without leaving any record that they were attending under the Sibling Act.

From the 1979-80 school year to the 1991-92 school year, the student population of Gould dwindled from 495 students to 357. The racial composition of the school system changed from 80% black and 20% white to about 97% black and 3% white. Grady's total enrollment dropped from 540 to 360 students over the same period, and the racial composition changed from 76% black and 24% white to about 87% black and 13% white. The change in the black-white student ratio can be attributed in part to transfers of white students. Also, some white families moved out of the Gould and Grady districts during this period. The loss in student enrollment caused a loss of state education funds. In fact, the Gould and Grady districts are barely financially viable, and state evaluations of the school districts show student academic achievement is markedly lower in the Gould and Grady districts than in Star City and Dumas.

Based on these facts, Edgerson contends the Lincoln County schools have become resegregated and the community perceives Gould and Grady as "black districts" neighbored by much "whiter" districts, Star City and Dumas. See United States v. Lowndes County Bd. of Educ., 878 F.2d 1301, 1305 (11th Cir. 1989). Edgerson claims the state officials and school districts promoted resegregation by permitting or encouraging white students from the Gould and Grady districts to attend the Star City or Dumas schools under the transfer statute and the Sibling Act. Edgerson also contends the Star City district encouraged resegregation by discriminating against black students, and state officials failed to remedy county-wide racial disparities and the serious educational deficiencies at the Gould and Grady schools.

The parties agree on the applicable law. Brown v. Board of Education established that "in the field of public education the

-6-

doctrine of `separate but equal' has no place.  Separate educational facilities [based on race] are inherently unequal."  347 U.S. at 495.  Accordingly, the Fourteenth Amendment's Equal Protection Clause prohibits states from mandating or deliberately maintaining segregated schools.  Milliken v. Bradley, 418 U.S. 717, 737 (1974).  States that operated segregated schools in the past must take necessary steps to eliminate segregation "root and branch."  Columbus Bd. of Educ. v. Penick, 443 U.S. 449, 459 (1979) (quoting Green v. County Sch. Bd., 391 U.S. 430, 438 (1968)).

To prove an Equal Protection violation, Edgerson must show the state and local officials acted with a discriminatory purpose.  Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1, 778 F.2d 404, 410 (8th Cir. 1985), cert. denied, 476 U.S. 1186 (1986).  Because Edgerson is seeking an interdistrict remedy (consolidation or an interdistrict magnet school plan), she also must show "there has been a constitutional violation within one district that produces a significant segregative effect in another district.  Specifically, [Edgerson must show] that racially discriminatory acts of the state or local school districts, or of a single school district have been a substantial cause of interdistrict segregation."  Milliken, 418 U.S. at 745;  Missouri v. Jenkins, 115 S. Ct. 2038, 2050-52 (1995).  Unlike cases involving segregation within a single school district, there is no presumption that racial imbalances among separate, independent school districts were caused by intentional discrimination.  Jenkins v. Missouri, 807 F.2d 657, 670 (8th Cir. 1986), cert. denied, 484 U.S. 816 (1987).  Rather, Edgerson must present clear proof of an interdistrict violation and clearly explain the extent of the interdistrict effects.  Id. at 666.  Also, Edgerson must demonstrate the interdistrict segregative effects are current.  Id.  "Federal courts may not . . . fashion a remedy to correct a condition unless it currently offends the Constitution."  Id.

The district court concluded the state and local officials'

actions did not have a significant interdistrict effect because the decrease in Gould and Grady's white enrollment was mainly a result of demographic changes. Also, the district court found the challenged actions had no current segregative effect, because at the time of trial there were no transfers that were negatively affecting the districts' racial balance. Edgerson challenges these findings and conclusions. Because the district court's finding of no current segregative effect is not clearly erroneous, see Little Rock Sch. Dist., 778 F.2d at 410-11, we affirm.

The record supports the district court's finding that the transfer policies were not negatively affecting the districts' racial balance at the time of trial, and thus had no current segregative effect. The record shows that since 1987, Arkansas law has prohibited transfers that would negatively affect the racial balance in the Gould and Grady districts, and those districts have refused to grant transfers. Gould and Grady also revoked all past transfers effective 1991. Although some of the transfer students from Grady never returned, there was evidence that no transfer students were still attending the Star City or Dumas schools at the time of trial. For example, the Star City superintendent testified that by 1993, there were no transfer students in his district. The Dumas superintendent testified there were about thirty transfer students at Dumas when Gould and Grady revoked the transfers, but after Dumas officials notified the students about the revocation, some of the students established legal residence in Dumas or left the district, and the superintendent refused to re-enroll a few students he identified as nonresidents. The superintendent believed all the former transfer students attending the Dumas schools at the time of trial were lawfully attending in Dumas. As far as the Sibling Act is concerned, there was testimony that only nine white students attended the Star City schools under the Sibling Act during 1992-93, and by the 1993-94 school year, all nine had established legal residence in Star City or were no longer attending school there. There were only two white families

attending the Dumas schools based on the Sibling Act.

Despite the district court's repeated requests for specific proof, Edgerson's witnesses were not able to identify any other students who resided in the Gould or Grady districts and were still attending the Star City or Dumas schools based on the challenged transfer policies. Edgerson's witnesses pointed to lists of students who had been covered by the Sibling Act or had been granted legal transfers at one time, but the defendants presented evidence that most of the listed students had graduated, stopped attending, established residence in Star City or Dumas, or were lawfully attending the Star City and Dumas schools based on state statutes not involved in this case. On this record, the district court's finding of no current segregative effect is well supported.

Edgerson contends that even if there are currently no student transfers that are negatively affecting the schools' racial balance, the transfer policies caused other current segregative effects in the Gould and Grady districts. Specifically, Edgerson claims the transfer policies created a continuing community perception that Gould and Grady are strictly black school districts and that Star City and Dumas are havens for white students. Relying on expert testimony presented at trial, Edgerson predicts white families will move out of the Gould and Grady districts, causing the local schools to lose more students and resources. No one disputes the white population in Gould and Grady is decreasing, but Edgerson did not show any specific individuals had moved or decided to move because of the transfer policies. Further, there is evidence in the record that Gould and Grady's declining agrarian economy offers limited job opportunities and some residents are moving away for this reason. The record also shows that before the Sibling Act and the transfer statute ever came into use, Gould and Grady were predominantly black districts and some white residents were threatening to move rather than send their children to school there. Looking at this mix of factors, the district court could

reasonably conclude the transfer policies were not causing white flight. District courts are "`uniquely situated . . . to appraise the societal forces at work in the communities were they sit.'" <u>Little Rock Sch. Dist.</u>, 778 F.2d at 411 (quoting <u>Columbus Bd. of Educ.</u>, 443 U.S. at 470 (Stewart, J., concurring)).

Edgerson also claims the district court ignored her contentions that the Star City School District discriminates against black students and that state officials have not taken adequate steps to improve black student performance and the quality of education in Gould and Grady. Although the district court did not discuss these contentions at length, we think the district court considered the contentions because the district court specifically mentioned them in its order. According to Edgerson, Star City's discrimination and the state officials' inaction are causing out-of-district attendance and white flight, but as we have already discussed, the district court was entitled to take a different view of the evidence. We are not holding that state officials may turn a blind eye to any lingering effects of the past, state-mandated dual school system within individual school districts. We are simply saying that the remedy must fit the wrong. Under <u>Milliken</u>, we cannot order interdistrict relief without a showing of interdistrict segregation. 418 U.S. at 745.

In conclusion, because the district court properly found the alleged constitutional violations are not currently causing racial segregation among the school districts, the court correctly refused to order consolidation or an interdistrict magnet school plan. We affirm the district court's denial of Edgerson's claim and dismissal of the cross-claims.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.