**Sharon GRUSSING, as trustee for the heirs and next-of-kin of Richard Grussing, deceased, Plaintiff,**

v.

**KVAM IMPLEMENT COMPANY, Defendant.**

**ALLIED PRODUCTS CORPORATION, Defendant and Third–Party Plaintiff, Respondent,**

v.

**JENNIE–O FOODS, INC. (and its division Earl B. Olson Farms), Third Party Defendant,**

**State of Minnesota, Department of Labor and Industry, Appellant.**

No. C0–91–947.

Court of Appeals of Minnesota.

Dec. 3, 1991.

Mark M. Stageberg, Kay N. Hunt, Lommen, Nelson, Cole & Stageberg, Minneapolis, Michael M. Erhardt, Wilcox, Erhardt & Spates, Benson, for Plaintiff Grussing.

Raymond R. Waechter, Gustafson & Waechter, Willmar, for defendant Kvam Implement Co.

Richard D. Allen, Richard D. Allen, Ltd., Minneapolis, for defendant Allied Products Corp.

Larry A. Hanson, Moore, Costello & Hart, St. Paul, for third party defendant Jennie–O Foods, Inc.

Hubert H. Humphrey, III, Atty. Gen., Scott R. Strand, Asst. Atty. Gen., St. Paul, for appellant State Dept. of Labor and Industry.

Considered and decided by KALITOWSKI, P.J., and FORSBERG and SCHUMACHER, JJ.

## OPINION

FORSBERG, Judge.

The state appeals from an order of the district court denying a motion to quash a subpoena of a Minnesota OSHA investigator for appearance at deposition and trial. The district court found the statute providing investigators a privilege from subpoena was unconstitutional under the due process and separation of powers provisions of the Minnesota and U.S. Constitutions. We reverse.

## FACTS

Richard Grussing was killed in a work-related accident at a Jennie–O Foods facility. A Minnesota OSHA investigation of the accident was performed by Debra Peterson, an employee of that department. As a result of the investigation, Jennie–O was fined. Jennie–O did not contest the case and the investigation was closed.

Grussing's estate filed suit against the equipment manufacturer whose product was involved in the accident. The manufacturer then filed a third-party complaint against Jennie–O. Allied subpoenaed the records of the Minnesota OSHA investigation and the testimony of investigator Peterson.

The state forwarded the records of the investigation but refused to produce investigator Peterson by invoking the statutory privilege contained in Minn.Stat. § 182.659, subd. 8 (1990). Despite the privilege, Allied obtained a subpoena from Swift County District Court and the state moved to quash. The motion was denied and the privilege statute was struck down by the district court as unconstitutional under the due process clause and separation of powers doctrine of the United States and Minnesota Constitutions. The state appeals.

## ISSUES

1. Did the district court err in finding Minn.Stat. § 182.659, subd. 8 (1990) an unconstitutional deprivation of due process?

2. Did the trial court err in finding Minn.Stat. § 182.659, subd. 8 unconstitutional under the separation of powers doctrine?

## ANALYSIS

■ 1. The statute in question provides, inter alia:

Neither the commissioner [of Labor and Industry] nor any employee of the department * * * is subject to subpoena for purposes of inquiry into any occupational safety and health inspection except in enforcement proceedings brought under this chapter. All written information, documentation and reports gathered or prepared by the department pursuant to an occupational safety and health inspection are public information once the departmental inspection file is closed.

Minn.Stat. § 182.659, subd. 8.

The district court found this statute violates a litigant's right to due process. Specifically, Allied was denied access to critical evidence by way of cross-examination of the investigator. In this posture, there is a concern as to whether this presents a question of substantive or procedural due process. However, this difficulty is not of great moment to our decision. Reversal is appropriate under either standard.

■ When a statute is alleged to violate a party's substantive due process rights, a court must apply the "rational basis" standard of review. This standard applies equally to due process or equal protection challenges to state legislation. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 470, 101 S.Ct. 715, 727 n. 12, 66 L.Ed.2d 659 (1981); *Essling v. Markman*, 335 N.W.2d 237, 239 (Minn.1983). The examining court must merely inquire whether (1) the act serves to promote a public purpose, (2) it is an unreasonable, arbitrary or capricious interference with a private interest, and (3) the means chosen bear a rational relation to the public purpose sought to be served. *Contos v. Herbst*, 278 N.W.2d 732, 741 (Minn.1979). In applying this standard, the U.S. Supreme Court notes:

States are not required to convince the courts of the correctness of their legislative judgments. Rather, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision maker." * * *

Although parties challenging legislation under the [due process clause] may introduce evidence supporting their claim that it is irrational, * * * they cannot prevail so long as "it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable." * * * Where there was evidence before the legislature reasonably supporting the [law], litigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken.

*Minnesota v. Clover Leaf Creamery Co.* 449 U.S. at 464, 101 S.Ct. at 724 (citations omitted).

The rational basis standard is easily met by the policy purposes of the statute in question. The legislative history of this statute indicates there are legitimate policy goals of furthering timely and impartial investigations by this agency. The reasonableness of these goals was discussed in relation to an analogous provision for federal OSHA inspectors, 29 CFR 2.20 and 2.22–24:

> Because of the nature of the programs it administers and enforces, OSHA is particularly vulnerable to the demands of private parties seeking information acquired as a result of official investigations concerning industrial accidents and other mishaps in the work place. If OSHA employees were routinely permitted to testify in private civil suits, significant loss of manpower hours would predictably result. Despite these restrictions on testimonies by its employees, the department's policy is to make all non-privileged portions of the investigative file available, providing there is no ongoing enforcement action. Thus, the department affords substantial accommodation in practice to the interest of private litigants, within limits consistent with the need for internal regulation of its affairs. Under analogous circumstances in *Larson*, the Supreme Court recognized "the necessity of permitting the government to carry out its functions unhampered by direct judicial intervention." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949).

*Reynolds Metals Co. v. Crowther*, 572 F.Supp. 288, 290 (D.Mass.1982).

The district court's conclusion that these policy goals are insufficient to justify a privilege when weighed against a litigant's right to discovery is an impermissible substitution of its own views for those of our elected legislature. The statutory privilege at issue here is related clearly and rationally to a legitimate governmental interest. The statute withstands constitutional scrutiny under the rational basis standard of

review and requires the district court be reversed.

■ Although the rational basis analysis has most often been applied to economic regulations, challenges of statutory privileges have also been analyzed under the procedural due process rubric. In *Coughlin v. Westinghouse Broadcasting & Cable, Inc.*, 780 F.2d 340 (3rd Cir.1985), *cert. denied*, 476 U.S. 1187, 106 S.Ct. 2927, 91 L.Ed.2d 554 (1986), the Pennsylvania Shield Law (statutory preclusion of discovery of reporter's notes and sources by a plaintiff in a public official libel action) was challenged by a party involved in a defamation suit against a television station. The concurrence in the *Coughlin* case contended:

> Our case is different from [cases in which] the parties seeking to overcome the reporters' privileges did not assert federal constitutional rights; here, by contrast, plaintiff makes a due process argument. Whereas courts may defer to legislatures when parties make policy arguments in favor of overturning reporters' statutory privileges, courts cannot defer to the judgment of legislatures when the parties seeking to overcome the privilege himself asserts a constitutional right. A legislative preference cannot limit a constitutional right.

\*　　\*　　\*　　\*　　\*　　\*

> Once it is recognized that deference to the state's policy determination embodied in the Shield Law is inappropriate on account of plaintiffs' due process claim, it seems clear that a *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893[, 47 L.Ed.2d 18] (1976) balancing test is appropriate. \* \* \* [T]he question is whether the Shield Law renders their judicial recourse so difficult as to be meaningless and thus a denial of due process. The question, that is, is how much process is due.

*Id.* at 351 (Becker, J., concurring).

The *Mathews v. Eldridge* case explains the three interests balanced in determining whether the specific dictates of due process are satisfied.

First, the private interest that will be affected by the official actions; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see also AFSCME Council 65 v. Blue Earth County,* 389 N.W.2d 244, 249 (Minn.App. 1986) (three-part *Mathews* test applied in determining whether due process rights are violated by county termination procedures), *pet. for rev. denied* (Minn. Aug. 20, 1986).

The *Mathews* balancing test still requires reversal of the district court's ruling. At issue here is a civil defendant's right to complete and unfettered discovery regarding its alleged liability. We note a party's right to discovery has traditionally been subject to any number of restraints imposed by the courts and Rules of Civil Procedure. The ultimate interest in this case is strictly pecuniary. We do not feel this rises to the "clear and significant" level of the private interest at stake in the *Coughlin* case, i.e., an individual's reputation as contested in a defamation suit.

This private interest is balanced against the government's interest in administrative efficiency. Because of the litigious nature of accidents investigated by OSHA, the investigators are especially likely to be subpoenaed in civil proceedings. The legislature did not feel it appropriate to have the State of Minnesota subsidizing a party's litigation with state paid expert witnesses. Likewise, there is a fear that the threat of being called as a witness in a legal proceeding may influence the manner and tenor of the investigator's work. The record is clear that the administrative efficiency concern in *Mathews* is at the very heart of the statutory privilege at issue here.

Next, *Mathews* requires an examination of the risk of deprivation of the private interests and the procedures the state uses as a substitute safeguard. Here, all parties have had an opportunity to depose various witnesses and experts regarding the events and circumstances leading to the fatal accident. Respondent notes extensive deposition testimony has been taken in this case and alleges that this discovery is conflicting and inconclusive.

However, juries are generally thought to be impaneled to deal with such uncertainties. Further, the state specifically provides for an alternative means of access to the OSHA investigator's findings by rendering the investigative files public documents after the file is closed. In this case, both parties have had access to the full written report of the inspector. Thus, the deprivation of access to information is at worst partial under this statutory privilege.

■ Respondent also raises fairly extensive equal protection arguments against the constitutionality of the statute. Specifically, it claims the statute picks out one administrative agency for the privilege and fails to give equal or comparable rights to the hundreds of other state administrative divisions. While this alleged equal protection violation may, assuming arguendo, result in some injury, respondent lacks standing to raise the issue. "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton,* 405 U.S. 727, 734–5, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972). This principle of standing is recognized and enforced by this court.

> It is an elementary doctrine of constitutional law that one who invokes the power of the court to declare a statute unconstitutional must be able to show not only that the statute is invalid but that the person has sustained or is in immediate danger of sustaining some direct injury resulting from its enforcement and not merely that the person suffers in some indefinite way in common with people generally.

*Paulson v. Lapa, Inc.,* 450 N.W.2d 374, 380 (Minn.App.1990), *pet. for rev. denied*

(Minn. Mar. 22, 1990). The respondent's equal protection arguments are not properly taken before this court, and the district court's rulings on due process are reversed.

■ 2. The district court also accepted respondent's argument that the statute is unconstitutional because it infringes upon the separation of powers between the various branches of government. The court claims the privilege impairs its judicial function by creating an immunity which interferes with its ability to submit relevant and material facts to the jury for its consideration.

We find no merit in this argument whether broadly construed, or more narrowly construed by distinguishing this privilege from other statutory privileges properly founded upon valid public policy grounds. Under the broad application, any statutory privilege would be an unconstitutional invasion of the separation of powers doctrine. However, the legislature in our state has traditionally been the primary source of law on evidentiary privileges. *See In re Parkway Manor Health Care Center,* 448 N.W.2d 116, 121 (Minn.App. 1989), *pet. for rev. denied* (Minn. Jan. 18, 1990). The more narrow interpretation of the argument is that no rational basis exists for this particular privilege, and therefore the legislature's authority in this area is outweighed by the importance of the court's functions. Courts have criticized legislative evidentiary enactments in the past, but upheld them as being consistent with the separation of powers doctrine.

> Undesirable though it may be, [the deadman statute] is still the law of this state, and it must be construed so as to carry out the full intent of the legislature. This is so though it "may produce a statutory rule of evidence that is strict and of which judges and text writers may disapprove."

*In re Estate of Lea,* 301 Minn. 253, 258, 222 N.W.2d 92, 96 (1974).

The district court also determined this statutory privilege is a legislative usurpation of executive authority. It found that the privilege is absolute and irrevocable, and therefore removes the executive's dis-

cretion in invoking the privilege. The district court stated further that the executive branch cannot assert the privilege in any case because that would usurp the judiciary's fact finding function.

Both assertions are incorrect. First, this privilege, as all privileges, may be waived by the privilege holder. Second, the fact finding function of the court is not without limit. There are legitimate executive interests involved in the smooth and efficient operation of the government's agencies which must be balanced against the courts' traditional function. *See United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). This is such a case. The alternative sources of information from OSHA for the jury's consideration more than adequately protect the threatened institutional interests in these situations.

### DECISION

The district court's order denying the motion to quash the subpoena is reversed.

Reversed.