In re Nancy **KAMMUELLER**,
Petitioner, Respondent,

and

Ramsey County, Respondent,

v.

Ronald William **KAMMUELLER**,
Appellant.

No. A03–582.

Court of Appeals of Minnesota.

Dec. 23, 2003.

Gregory P. Seamon, Woodbury, MN, for respondent Nancy Kammueller.

Susan Gaertner, Ramsey County Attorney, Mitchell L. Rothman, Assistant Ramsey County Attorney, St. Paul, MN, for respondent Ramsey County.

John G. Westrick, Marcia McDowall–Nix, Tammy L. Merkins, Westrick & McDowall–Nix, P.L.L.P., St. Paul, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; GORDON W. SHUMAKER, Judge; and CRIPPEN, Judge.*

## OPINION

GORDON W. SHUMAKER, Judge.

Appellant father argues that the district court abused its discretion when it failed to consider father's increased parenting time in denying father's motion to modify child support so as to decrease his monetary obligation. Father also argues that the presumption in Minn.Stat. § 518.54, subd. 8 (2002), that a parent with sole physical custody is not a child-support obligor violates the Equal Protection Clause of the constitutions of both Minnesota and the United States. Because the mere increase in parenting time is an insufficient basis to require the modification of a child-support obligation, and because Minn.Stat.

§ 518.54, subd. 8, does not suffer from a constitutional infirmity, we affirm.

## FACTS

In their marriage-dissolution stipulation, appellant Ronald Kammueller and respondent Nancy Kammueller agreed that they would share joint legal custody of their two minor children and that the mother would have sole physical custody, subject to a parenting-time schedule that would allow the father to care for the children during part of each day and would give him total average weekly parenting time of 38%. The parties agreed that the father would pay monthly support of $338, an amount $100 less than that provided by the child-support guidelines. Without making findings to support a deviation from the child-support guidelines and without applying or mentioning a *Hortis/Valento* formula, the district court approved the parties' stipulation and incorporated it in a judgment of dissolution entered May 11, 1998.

Between September 10, 1999, and April 8, 2002, the district court amended the parenting-time provision of the judgment four times but did not modify the father's child-support obligation. In one order, the court noted a court services' recommendation that further adjustments in parenting time should be based on the concept of the children spending nearly equal time with each parent. In another order, made in response to the father's motion for a modification of child support, the court indicated that "the parties agreed that a *Valento* calculation would not apply to this type of parenting plan."

On October 3, 2002, the father again moved to modify child support, arguing that the mother should be treated as a

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

child-support obligor because of the substantial amount of parenting time the father exercises and that the *Hortis/Valento* formula should be applied to determine the father's support obligation. A child support magistrate heard the motion and denied it.

Upon review of the magistrate's order, the district court also denied the father's motion to modify child support, finding:

> When the parties have agreed that the *Hortis/Valento* calculation does not apply, where there is no affirmative agreement to apply *Hortis/Valento* to child support and where there has been no substantial change in the custodial arrangements since the agreement, *Hortis/Valento* cannot be applied. There is neither a factual [n]or legal basis to justify a departure from the child support guidelines by applying *Hortis/Valento* formula to child support.

The father appeals, contending that the district court abused its discretion by refusing to modify the father's support obligation and that the presumption in Minn. Stat. § 518.54, subd. 8 (2002), that the mother is not a child-support obligor when the father has the care of the children 67% of the time violates the equal-protection clauses of the state and federal constitutions.

## ISSUES

1. Is a child-support obligor's increase in parenting time, standing alone, a sufficient basis for a downward deviation from child-support guidelines?

2. Does the rebuttable presumption in Minn.Stat. § 518.54, subd. 8 (2002), that the physical custodian of a minor child is not a child-support obligor, violate the Equal Protection Clauses of the Minnesota and United States constitutions?

## ANALYSIS

■ The district court enjoys broad discretion to modify child support, and its decision will be upheld unless the court has committed clear error and its decision is against logic and the facts in the record. *Moylan v. Moylan,* 384 N.W.2d 859, 864 (Minn.1986). A child-support order may be modified upon a showing of a substantial change in circumstances that makes the existing order unreasonable and unfair. Minn.Stat. § 518.64, subd. 2 (2002). A party who moves to modify a child-support order has the burden to establish a substantive change in circumstances. *Gorz v. Gorz,* 552 N.W.2d 566, 569 (Minn.App. 1996). Findings of fact will not be set aside unless they are clearly erroneous. Minn. R. Civ. P. 52.01.

### 1. *Abuse of Discretion*

The father notes that the child-support obligation to which the parties originally stipulated was a downward deviation from the guidelines, and he argues that "[i]t appears ... that the deviation was based on the minimum amount of time [he] spent with the children." He contends that each of the succeeding orders affirmed that deviation, as did the child-support magistrate's order, but that the *Hortis/Valento* formula was never applied. He argues that he never waived application of *Hortis/Valento,* but that, even if there were a waiver, it was based upon the parenting-time schedule reflected in the original judgment.

■ The *Hortis/Valento* formula may be applied to instances of joint physical custody so that a parent pays child support only for the times during which the other parent exercises custody of the children. *Valento v. Valento,* 385 N.W.2d 860, 862 (Minn.App.1986), *review denied* (Minn. June 30, 1986); *Hortis v. Hortis,* 367 N.W.2d 633, 636 (Minn.App.1985).

The father infers a de facto *Hortis/Valento* application from the lack of any finding to support a guidelines deviation and from the settled law that child support cannot be waived. *Aumock v. Aumock,* 410 N.W.2d 420, 421–22 (Minn.App.1987). There are two reasons that the father's inference is incorrect.

First, *Hortis/Valento* deals merely with the allocation of child-support obligations. We know of no authority, and the father has cited none, that suggests that parties cannot waive the *Hortis/Valento* formula as long as minor children are adequately supported. Here, the parties expressly agreed that there would be no *Hortis/Valento* application to the father's child-support obligation. As quoted by the child support magistrate, the parties' stipulation makes this clear: "Guideline child support currently that's $338 dollars per month. Even though we have a non-traditional parenting schedule, there will be no adjustment under the current schedule, no *Valento* offset, it's been paid." There was further reference to a *Valento* calculation in the court's order of March 23, 2001, amending the judgment to reflect an increased parenting-time schedule. The court noted that the parties had agreed not to apply a *Valento* formula. In that order and the order of September 8, 1999, the court refers to the fact that the parties based the parenting time schedule on a nearly equal time-sharing with the children or on an arrangement that reflects the substantial and frequent access by the father as established in the original judgment.

■ A second reason the father's inference about a de facto *Hortis/Valento* application is incorrect is that it assumes that the amount of time a parent (custodial or noncustodial) spends with a child is relevant to the issue of *whether* to apply the *Hortis/Valento* formula in setting child support. Although parenting time is relevant to determining the *amount* of support to be paid, it is not relevant in deciding whether to apply *Hortis/Valento*:

> [W]hen parents stipulate to a physical-custody arrangement and the district court adopts that arrangement, the dispositive factor in determining whether the arrangement establishes sole physical custody for one parent or joint physical custody for both parents, and therefore whether it is presumptively appropriate to apply the *Hortis/Valento* child support formula, is the district court's description of the physical-custody arrangement.

*Nolte v. Mehrens,* 648 N.W.2d 727, 730 (Minn.App.2002). Here, because the district court adopted the parties' stipulation that mother would have sole physical custody, it was not presumptively appropriate to set child support under the *Hortis/Valento* formula. *See Schlichting v. Paulus,* 632 N.W.2d 790, 793 (Minn.App.2001) (noting application of *Hortis/Valento* formula is presumptively appropriate in cases of joint physical custody).

■ Even if a *Hortis/Valento* application were proper when the noncustodial parent spends more than 50% of the time with the children, the parties' express stipulation, their history of agreeing to the father's very substantial parenting time, and the fact that neither party ever previously appealed the issue of the apparent *Hortis/Valento* waiver, compels the conclusion that they waived any offset against child support based on the father's parenting time.

■ Although a change in physical custody of minor children can be a substantial change in circumstances that makes the existing support order unreasonable and unfair, that did not happen here. *Buntje v. Buntje,* 511 N.W.2d 479, 481 (Minn.App.

1994). From time to time, with the mother's agreement and the court's approval, the father increased his parenting time. This voluntary conduct, by itself and without any allegation of increased expenses, does not affect his child-support obligation.

Left unexplained is the $100 support deviation in the original judgment. Because a *Hortis/Valento* adjustment clearly was neither contemplated nor presumptively appropriate, it is possible that the deviation was simply an unchallenged error or that it was purposeful but the court inadvertently failed to make a supporting finding when it approved the parties' stipulation—which did not contain such a finding—in its entirety. If any adjustment is to be made so as to either justify the deviation or increase the father's obligation to the appropriate guidelines amount, it must be done through the usual district court process.

The district court did not abuse its discretion in denying the father's motion to reduce his child-support obligation.

## 2. *Equal Protection*

The father argues that Minn.Stat. § 518.54, subd. 8 (2002), as applied, violates the equal-protection clauses of the state and federal constitutions because the use of the sole physical custodian label causes similarly situated persons to be treated differently.

Statutes are presumed to be constitutional. *Snyder v. City of Minneapolis*, 441 N.W.2d 781, 788 (Minn.1989). Anyone who claims a statute is unconstitutional has the burden of proving so beyond a reasonable doubt. *Scott v. Minneapolis Police Relief Ass'n*, 615 N.W.2d 66, 73

(Minn.2000). This court reviews the constitutionality of a statute de novo. *Weinberger v. Maplewood Review*, 668 N.W.2d 667, 671–72 (Minn.2003).

The mother contends that the father's appeal of the constitutional issue is not timely because he did not raise it within 60 days of the entry of the order of March 23, 2001. A person has no standing to make a constitutional challenge until he can show direct, personal harm from the alleged constitutional violation. *City of Minneapolis v. Wurtele*, 291 N.W.2d 386, 393 (Minn.1980). The father contends that he could not show the requisite harm until he exceeded 50% parenting time and became what he claims is the de facto physical custodian of the children.[1] We agree that he did not likely acquire standing to challenge the application of the statute until he allegedly exercised more parenting time than the sole physical custodian. Thus, the father's appeal of this issue was timely.

The principle underlying the right of equal protection is that people who are similarly situated will be treated in a similar manner by the law. *Rocco Altobelli, Inc. v. State, Dep't of Commerce*, 524 N.W.2d 30, 37 (Minn.App.1994). The father argues that Minn.Stat. § 518.54, subd. 8, as applied, violates equal protection because a parent who carries the label "sole physical custodian" is accorded greater benefit by the law than a parent who does not have that label, even though the "noncustodial" parent might spend as much time caring for the children as the custodial parent does.

Minn.Stat. § 518.54, subd. 8, defines "obligor" as a person who is obligated to

---

1. We note that the legislature recently enacted Chapter 257C of the Minnesota Statutes and that Chapter 257C addresses de facto custodians. *See* 2002 Minn. Laws ch. 304, §§ 1–10 (now codified at Minn.Stat. §§ 257C.01–06 (2002)). We also note that the question of a de facto custodian under Chapter 257C was not litigated in district court.

pay child support and provides: "A person who is designated as the sole physical custodian of a child is presumed not to be an obligor for the purposes of calculating correct support ... unless the court makes specific written findings to overcome this presumption." Physical custody "means the routine daily care and control and residence of the child." Minn.Stat. § 518.003, subd. 3(c) (2002).

Applying the definition of physical custody to a sole physical custodian, it is readily inferable that the custodian has not only the right but also the duty of providing daily care and control of and residence for the child. A noncustodial parent has access to a child through "parenting time," which "means the time a parent spends with a child regardless of the custodial designation ...." Minn.Stat. § 518.003, subd. 5 (2002). Nothing in the law imposes on the noncustodial parent who exercises parenting time the same fundamental duties required of a custodial parent.

■ Unless a statute involves a suspect classification or a fundamental right, constitutional challenges are assessed under a rational-basis standard. *In re Estate of Turner*, 391 N.W.2d 767, 769 (Minn. 1986). The father does not claim that Minn.Stat. § 518.54, subd. 8, contains a suspect classification; and, because child-support obligations are premised on the child's right and need to be supported by its parents, there is no fundamental right of a parent to have a child-support obligation based solely on the amount of time the parent spends with the child. *See Walker v. Walker*, 574 N.W.2d 761 (Minn. App.1998) (applying the rational-basis test to an equal-protection challenge of the child-support statute), *review denied* (Minn. Apr. 30, 1998).

■ The Minnesota rational-basis test is more stringent than that used in the federal courts. *State v. Frazier*, 631

N.W.2d 432, 435 (Minn.App.2001). Thus, in assessing the father's constitutional challenge, it is not necessary to analyze the federal standard. Minnesota requires that (1) the distinctions not be manifestly arbitrary but rather must be genuine and substantial, thereby providing a natural and reasonable basis to justify the classification; (2) the classification must be relevant to the purpose of the law, that is, there must be an evident connection between the needs peculiar to the class and the prescribed remedy; and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve. *State v. Russell*, 477 N.W.2d 886, 888 (Minn.1991).

The first prong of the Minnesota test requires us to determine whether there is a genuine and substantial distinction between the classes rather than merely an arbitrary designation. *Westling v. County of Mille Lacs*, 581 N.W.2d 815, 820 (Minn. 1998). The father argues that the distinction is little more than a label. However, the legislature made a substantive distinction when, through definition, it gave one party fundamental, ongoing rights and duties but did not impose the same duties on the other. Minn.Stat. § 518.003, subds. 3(c), (d) (2002). The legislature recognized that traditionally a minor child of parties whose marriage has been dissolved will live principally with one parent and that parent will expend daily financial, physical, and emotional resources in caring for and controlling the child and in providing the child with shelter. In contrast, the visiting parent will ordinarily spend less time with the child, will have fewer responsibilities of care and control, and arguably will have different and lesser financial obligations respecting the daily care and control of the child.

It might be noted at this point that not all parents fit the traditional pattern. In

fact, the parties here once referred to their parenting time arrangement as nontraditional. But both the statute under review and the definitions statute allow the parties to change both the classifications and the significance of the classifications. Minn.Stat. § 518.003, subd. 3, provides that the physical custody definition will apply "[u]nless otherwise agreed by the parties." And Minn.Stat. § 518.54, subd. 8, states that the presumption that the sole physical custodian is not an obligor can be overcome if the court makes specific findings to do so.

The second prong of the test requires that the classification be relevant to the purpose of the law. *Westling*, 581 N.W.2d at 820. It is irrefutable that it is in a child's best interests that he or she receives adequate support. In the traditional arrangement, the custodial parent spends money to provide ongoing daily care of the child, and the noncustodial parent augments those expenditures by providing cash payments or by paying bills for a child's care. The traditional noncustodial parent is not in a position conveniently to ensure daily, ongoing care except through periodic payments to be used for that purpose. Thus, the legislature chose to designate the person who makes "external" contributions as the obligor. And the support guidelines are presumed to fix a fair amount of that payment. Ideally, the combination of the "internal" support contributions by the custodial parent and the "external" support payments by the noncustodial parent produces adequate support of the child. The purpose of Minn.Stat. § 518.54, subd. 8, is to clarify that the custodial parent, already having all of the duties and obligations associated with being a custodial parent, is presumptively not also to be responsible for the "external" contributions traditionally made by the noncustodial parent. The presumption of the statute comports with the tradi-

tional custody arrangement and the traditional way of ensuring adequate support. But to ensure fairness to the parties, the statute makes the presumption rebuttable.

The third prong of the statute needs little discussion for it is not subject to reasonable debate that a legitimate goal of government is to promote the welfare of its citizens. Surely, the care and support of children are among the government's highest concerns. This legislation directly and reasonably addresses those concerns.

The challenged legislation meets all three prongs of the rational-basis test, and the father has failed to show the statute's unconstitutionality.

## DECISION

Because there is no authority stating that time spent with children is alone sufficient to justify a finding of a substantial change in circumstances and because the *Hortis/Valento* formula does not apply in this case, we affirm the district court's denial of a modification in child support. Because Minn.Stat. § 518.54, subd. 8 (2002), creates a rebuttable presumption that distinguishes between differences in substantive conduct of the parents rather than simply assigning labels, we affirm the constitutionality of the statute.

Appellant has moved to strike pages 14 through 16 of respondent's brief on the grounds that information in those pages "has first been provided on appeal, is not part of the record below, and not material to the subject of the appeal."

The record below includes the stipulated order of April 8, 2002, and discloses no motion by the appellant in any of the various modification proceedings to change custody. As to these matters, the motion is denied.

The purported factual background of the stipulated order and the inferences of fact respondent urges respecting appellant's failure to move to modify custody appear for the first time on appeal and are, therefore, stricken. As to these matters, the motion is granted.

**Affirmed; motion granted in part.**