In re Sheila Marie DOLL, Respondent.

County of Stearns, Respondent,

v.

Joseph Jerome BARNELL, Appellant,

State of Minnesota, by its Department of Human Services, Intervenor.

In re Susan D'Ann Strandmark, Respondent,

v.

Randall James Starr, Appellant,

Anoka County, Respondent.

Nos. A04–925, A04–1146.

Court of Appeals of Minnesota.

March 22, 2005.

---

Sheila Marie Doll, Deerwood, MN, pro se respondent.

Richard J. May, Assistant Stearns County Attorney, St. Cloud, MN, for respondent Stearns County.

Thomas B. James, Cokato, MN, for appellant Barnell.

Mike Hatch, Attorney General, Erika Schneller Sullivan, Cynthia B. Jahnke, Assistant Attorneys General, St. Paul, MN, for intervenor State of Minnesota.

Susan D'Ann Strandmark, Andover, MN, pro se respondent.

Robert M.A. Johnson, Anoka County Attorney, Janice M. Allen, Assistant County Attorney, Anoka, MN, for respondent Anoka County.

Mark A. Olson, Olson Law Office, Burnsville, MN, for appellant Starr.

John Remington Graham, Comte de Lotbiniere, Quebec, GOS 1Z0 Canada, for amicus curiae R–KIDS of Minnesota.

Considered and decided by HALBROOKS, Presiding Judge,

HUSPENI, Judge,** and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

In these consolidated child-support disputes, appellants Joseph Barnell and Randall Starr argue that Minnesota's child-support guidelines violate the United States Constitution's Supremacy, Due Process, and Equal Protection Clauses. Appellant Barnell also argues that the district court (1) abused its discretion in setting his child-support obligation at an excessive amount absent a finding that he was voluntarily unemployed or underemployed and in denying reduction of his medical support obligation, and (2) made child-support findings unsupported by the evidence. We affirm the district court order upholding the constitutionality of the guidelines because appellants have not clearly demonstrated constitutional defects, and the order suspending Barnell's child-support obligation because he may seek his requested relief in the district court.

## FACTS

*Doll v. Barnell*

Appellant Joseph Barnell and respondent Sheila Doll are the parents of a seven-year-old boy. Unmarried, they entered into a declaration of parentage two days after the child was born. In 2000, when Doll applied for Title IV–D services, Barnell was adjudicated the father and or-dered to pay child support beginning March 1. The child resided with Doll. The order, pursuant to the parties' stipulation, included findings that Barnell was employed at CDI Corporation, earning a net monthly income of $3,133, and that Doll worked two or three part-time temporary jobs with no medical coverage and a net monthly income of $751. Barnell was ordered to pay $783 monthly child support, contribute $89 monthly for childcare, pay 81% of the child's uninsured medical expenses, and obtain medical insurance for the child.

In 2003, Barnell was living in Nebraska with his wife and two other children when their home and his home-office were struck by a tornado. In August, Barnell moved to modify his child-support obligation to $0, modify the childcare order to $0, and change the responsible party for medical and dental insurance to Doll. Alternatively, Barnell requested that the court set support and medical and dental obligations "without reference to the percentage guidelines set out in Minn.Stat. § 518.551" and declare the child-support guidelines unconstitutional. His supporting affidavit indicated that his contract of employment with CDI had ended three years earlier and, since then, he had been self-employed or temporarily employed.[1] Although his motion asked for the reduction of child support to $0, his affidavit stated that a temporary suspension due to the tornado would be reasonable.

By order dated September 30, 2003, the child support expedited process matter

---

** Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. In 2002, an order for judgment for arrearages was filed against Barnell. At that time, he was found unable to comply with the existing order but not entitled to retroactive modification. Despite the district court's declaration that Barnell's motion for modification of his child support "must be served and filed according to the Rules of General Practice," Barnell failed to properly bring a motion to modify the order.

was referred to the district court. The court denied Barnell's motions to modify and to declare the guidelines unconstitutional and suspended his child-support obligation for three months.

*Strandmark v. Starr*

Appellant Randall Starr and respondent Susan Strandmark are the parents of a nine-year-old boy. Two and one-half years after the child's birth, Starr was adjudicated the child's father and, based on an oral stipulation of the parties, he was ordered to pay temporary monthly child support. Strandmark received sole physical custody of the child. Starr obtained a downward modification two years later due to a reduction in his net monthly income. At that time "the parties agreed and the court ordered that [Starr] would pay child support of $630 per month ... [which] was an upward deviation from the presumptive child support guidelines." "The basis for the deviation was a compromise between the parties of issues relating to the calculation of [Starr's] net monthly income." The parties also agreed that Strandmark would maintain medical and dental insurance, and Starr would contribute to insurance and childcare costs.[2]

About two years later, Starr moved to modify his obligation[3] and declare the guidelines unconstitutional. On November 7, 2003, the court concluded that Starr had not demonstrated a substantial change making the child-support order unreasonable or unfair, but that there had been a substantial change making the existing medical support order unreasonable and unfair. On November 21, the court denied the motion to declare the guidelines uncon-

stitutional and subsequently filed a memorandum of law. Starr appealed from the order denying his motion to declare the guidelines unconstitutional.

This court granted R–KIDS' request for leave to file an amicus brief and the Minnesota Attorney General's motion to intervene, and denied a motion to dismiss. Barnell moved to strike Stearns County's brief and appendix and for attorney fees.

## ISSUES

1. Did the district court correctly determine that the child-support guidelines codified at Minn.Stat. § 518.551 (2004) are constitutional under the United States Constitution's Supremacy, Equal Protection, and Due Process Clauses?

2. Did the district court abuse its discretion by denying appellant Barnell's motions to modify the child-support and medical-support obligations and instead temporarily suspending child support with reinstatement of the existing child-support order in three months?

## ANALYSIS

## I. CONSTITUTIONALITY

### A. Initial Considerations

#### 1. Presumption of Constitutionality

 We evaluate a statute's constitutionality as a matter of law. *Granville v. Minneapolis Pub. Schs.*, 668 N.W.2d 227, 230 (Minn.App.2003), *review denied* (Minn. Nov. 18, 2003). Minnesota statutes are presumed constitutional and are declared

---

2. Starr's contribution to childcare costs was later reserved based on a stipulation and order to amend the amended judgment dated December 16, 1999.

3. Starr brought the modification motion even though "[t]he parties agree[d] that based

upon the provisions of Minn.Stat. § 518.64, [s]ubd. 2(b)(1), it cannot be presumed that there has been a substantial change of circumstances which would make the existing child support order rebuttably presumed to be unreasonable or unfair."

unconstitutional only "with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989). "If a legislative act is reasonably susceptible of two different constructions, one of which will render it constitutional and the other unconstitutional, the former must be adopted." *Fed. Distillers, Inc. v. State*, 304 Minn. 28, 39, 229 N.W.2d 144, 154 (1975). "[F]airly debatable questions as to [a law's] reasonableness, wisdom, and propriety are not for the determination of courts, but for the legislative body...." *S.C. State Highway Dep't v. Barnwell Bros.*, 303 U.S. 177, 191, 58 S.Ct. 510, 517, 82 L.Ed. 734 (1938); *see also State v. Merrill*, 450 N.W.2d 318, 321 (Minn.1990). As indicated in more detail below, it is apparent from the arguments presented by appellants that they are in the nature of political positions that are properly raised only in the legislative forum.

*2. Rational Basis*

■ Unless a constitutional challenge to a statute involves a suspect classification or a fundamental right, this court reviews the challenge without strict scrutiny of the statute, using instead a rational basis standard under both the state and federal constitutions. *Kolton v. County of Anoka*, 645 N.W.2d 403, 411 (Minn.2002).

■ This court has previously recognized that "there is no fundamental right of a parent to have a child-support obligation based solely on the amount of time the parent spends with the child"; rather, the amount of time a parent spends with a child was a factor to be considered in setting a support obligation. *Kammueller v. Kammueller*, 672 N.W.2d 594, 600 (Minn.App.2003). And because the amount of time a parent spends with a child is merely a factor to be considered in setting a support obligation, it follows that

a parent does not have a fundamental right to have the child-support obligation based solely on the actual cost of the actual needs of a child or any other single basis.

Nevertheless, appellants argue that the child-support guidelines impact their fundamental right to control their care of their children. But in the context of competing biological parents in a child-support matter, appellants have cited no precedent and we have found none holding that one parent has a fundamental right respecting the amount of child-support obligations. While a "general freedom from governmental intrusion in child-rearing decisions" and a "right to familial privacy" that is "not absolute" have been recognized, *see LaChapelle v. Mitten*, 607 N.W.2d 151, 164 (Minn.App.2000), *review denied* (Minn. May 16, 2000), here, those rights and freedoms conflict with the child's paramount right to support and the public protection of the child's best interests. *See Putz v. Putz*, 645 N.W.2d 343, 352 (Minn.2002) (noting strong state policy of assuring that children have adequate and timely economic support of their parents); *Jacobs v. Jacobs*, 309 N.W.2d 303, 305 (Minn.1981) (stating that duty of support commences with child's birth); *see also Kaiser v. Kaiser*, 290 Minn. 173, 180, 186 N.W.2d 678, 683 (1971) (stating that child-support provisions in stipulations, as those relating to "the nonbargainable interests of the children," are subject to less restraint by courts). Based on this precedent, there is no merit in appellants' argument that a fundamental right of parents is at stake.

■ We also find no merit in appellant Starr's suggestion that gender is implicated in the statutory scheme. Starr cites to no provision distinguishing the parties by sex or burdening mothers over fathers or vice versa. Stating that there is a history in Minnesota law of mothers being the presumptive custodians of children and

custodians having no child-support obligation, Starr states that the child-support requirement applies only to men in the vast majority of cases, even today. Starr's argument disregards the pervasive gender neutrality of the current marriage dissolution and child-support laws in Minnesota. *E.g.,* Minn.Stat. §§ 518.003, subd. 3, 518.17, 518.1705, 518.175, 518.54, subds. 7–8 (2004). If men are the majority of obligors, it is not because the statutory scheme mandates that conclusion. Most significantly to the point of Starr's gender argument, the sole physical custodian is only presumed not to be the obligor, but the presumption may be overcome by a proper showing. Minn.Stat. § 518.54, subd. 8.

Appellants are not entitled to strict scrutiny of the child-support statutes in their constitutional arguments.

### 3. Faulty Premise

Appellants premise their arguments on the proposition that the courts "mechanically apply" the child-support guidelines chart rather than looking at the particular facts of each case. The express language of the guidelines precludes such a mechanical application. *See* Minn.Stat. § 518.551, subd. 5(c), (i) (2004) (requiring courts to consider factors in addition to guidelines and allowing deviations from guidelines). The cases at hand exemplify courts considering the unique facts of each case. Both cases demonstrate the influence that the individual parties have on fashioning a fair and reasonable child-support order. Both appellants stipulated to the initial child-support orders; Starr later worked out a modification based on a compromise

with Strandmark, and Barnell obtained an uncontested total suspension of his obligation. Such outcomes would not be possible if these courts had mechanically applied the guidelines.

### B. Equal Protection

■ The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides in relevant part "[no state shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.[4] An equal protection analysis begins with the mandate that all similarly situated individuals shall be treated alike, but only "invidious discrimination" is deemed constitutionally offensive. *In re Estate of Turner,* 391 N.W.2d 767, 769 (Minn.1986).

■ Appellants fail to make the threshold showing that they, as noncustodians, are similarly situated with respect to the respondent-custodians. This court has already indicated that custodial and noncustodial parents are not similarly situated and have distinct duties. *Kammueller,* 672 N.W.2d at 600 (stating that it is readily inferable from child-support statutes that the custodian, in contrast to the noncustodian, has "not only the right but also the duty of providing daily care and control of and residence for the child"); *accord Georgia Dep't of Human Res. v. Sweat,* 276 Ga. 627, 580 S.E.2d 206, 211 (2003). Although this finding disposes of appellants' equal protection argument, *see State by Spannaus v. Lutsen Resorts, Inc.,* 310 N.W.2d 495, 497 (Minn.1981) (stating that finding that parties are similarly situated is essential to ruling on equal protection), we also find evident a rational basis

---

**4.** The Minnesota Constitution provides that "[n]o member of this state shall be disenfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." Minn. Const. art. I, § 2. Both the federal and state equal protection clauses have been analyzed under the same principles. *In re Estate of Turner,* 391 N.W.2d 767, 769 (Minn.1986).

for the standards announced in the guide-lines statute.

■ Under the rational basis test, legislation will not be set aside if any state of facts reasonably may be conceived to justify it. *Blue Earth County Welfare Dep't v. Cabellero,* 302 Minn. 329, 342, 225 N.W.2d 373, 381 (1974). With these principles in mind, it is clear from a reading of Minnesota's child-support guidelines that they permit attention to the unique circumstances of each case, and the legislature was well within its constitutional authority in determining to maximize the recovery of child support, in respecting custodial care without placing a dollar value on it, and in assessing a presumptive level of need for children.

Appellants have not established that they are similarly situated with respondents. Because of this and because the guidelines statutes are not lacking in rational bases and do not implicate a fundamental right or a suspect classification, appellants have not carried their burden to show a violation of the equal protection clause.

## C. Due Process

■ Substantive due process requires that "[u]nless a fundamental right is limited or a classification is based on a suspect class, minimal judicial scrutiny of legislation is appropriate." *Lukkason v.1993 Chevrolet Extended Cab Pickup,* 590 N.W.2d 803, 806 (Minn.App.1999). As noted above, the constitution does not recognize a fundamental right to have child-support decisions made without interference from the state.

■ Absent cause for special scrutiny, legislation is constitutional if it is not unreasonable, arbitrary, or capricious and bears a rational relation to the public purpose it seeks to promote. *Contos v.*

*Herbst,* 278 N.W.2d 732, 741 (Minn.1979); *Arcadia Dev. Corp. v. City of Bloomington,* 552 N.W.2d 281, 288 (Minn.App.1996), *review denied* (Minn. Oct. 29, 1996); *Grussing v. Kvam Implement Co.,* 478 N.W.2d 200, 202 (Minn.App.1991).

■ Many decisions of this court and the supreme court have recognized a substantial state interest in ensuring child support for the state's children. Starr himself concedes that "[t]he interest of the [s]tate in compelling payment of child support extends to assuring that the legitimate needs of the children are fairly met." Appellants' primary attack on the guidelines is that they require payment of more than the amount required for the children's basic needs.

■ As indicated in the legislative history of the guidelines, from the beginning, Minnesota has endeavored to tailor the guidelines to render fair and reasonable child-support amounts, and the cost of rearing has been part of that formula. At best, appellants and R–KIDS' submissions show that the "adequacy" of awards is subject to debate. But a statute is not rendered unconstitutional simply because it "is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)).

The legislature has factored in the many variables involved in the debate and has allowed deviations from the guidelines and agreements of the parties with the paramount consideration of the best interests of the child. Minn.Stat. § 518.551, subd. 5(c), (i). The legislature's reasonable objective is furthered by the means provided in the legislation.

### D. Supremacy Clause[5]

■■■ "Whether federal law preempts state law is generally an issue of statutory construction," which is reviewed de novo. *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 9 (Minn.2002) (citing *Pikop v. Burlington N. R.R. Co.*, 390 N.W.2d 743, 748 (Minn.1986)). To the extent that the preemption doctrine finds its roots in the supremacy clause, it implicates constitutional concerns, burdens, and standards. *See* U.S. Const. art. VI; *Martin*, 642 N.W.2d at 17 (finding of preemption implicates obligation to interpret statute to avoid constitutional defects). Federal law can preempt state law either expressly, by implication, or by direct conflict. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990).

■■■ A comparison of the Minnesota statutory language with the federal regulations shows no express preemption and no intent to occupy the field of child-support guidelines. *See Rose v. Rose*, 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599 (1987) (preemption case prefaced with court stating that "whole subject" of domestic relations of husband and wife and parent and child belongs to states and not to laws of United States); *Martin*, 642 N.W.2d at 10–11. *Compare* Minn.Stat. § 518.551 (2004) *with* 45 C.F.R. § 302.56. The preemption issue turns on the question of whether state law is in conflict with federal law.

■■■ Appellants fail to show that the existing Minnesota guidelines conflict with or violate the mandates of federal law. Appellants attempt to create a conflict by producing documents allegedly showing that the state has failed to consider "economic data on the cost of raising children" as required by 45 C.F.R. § 302.56(h). But this documentary evidence does not show that the state has failed to consider this data. Despite appellants' contention that the state has failed to properly review its guidelines, it is undisputed that the Minnesota guidelines have received federal approval. And the record supports the state's assertion that the guidelines satisfy all federal child-support requirements. The evidence includes the Minnesota Department of Human Services' 2002 Quadrennial Review of Minnesota Child Support Guidelines, which expressly considers "economic data on the cost of raising children and an analysis of case data relating to application of the guideline," as well as numerous other documents showing compliance with federal expectations. *See, e.g.,* Kathleen E. Pontius, *Minnesota's Child Support Guidelines: Toward a Fair and Rational Standard for Child Support*, 9 Hamline L.Rev. 459, 460 n. 6 (1986–87) (noting that original guidelines formula was developed to comply with Title IV–D standards and derived from studies and data in child-support cases in Minnesota and other states); Information Brief on Child Support Enforcement in Minnesota from Minn. House of Representatives, Research Department (revised ed. Aug. 1987); Minn. Dep't of Human Services, Review of Legislative History and Case Law: Minnesota Child Support Guidelines (June 9, 1990) (study by consultant reiterating original sources of guidelines). At best, appellants' documents present some debate on the meaning of the "cost of raising children."

---

**5.** Anoka County and the state specifically challenge appellants' standing to make their claims of an individual right to enforce the federal law and regulation citing *Blessing v. Freestone*, 520 U.S. 329, 339, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). We do not reach the issue of standing to assert the federal claim because we conclude the claim lacks merit.

Because the federal law requires that the state "consider" the cost of raising children and the evidence indicates that the state did so, appellants cannot demonstrate that the state has failed to comply with the federal regulations or that there is a conflict between the two underlying laws. Moreover, even if the evidence established that Minnesota's review of its guidelines was deficient, conflict with the federal law would not be significant for preemption purposes; the state would simply be ineligible for incentive payments under the federal scheme. There is no federal preemption of state law.

## II. Barnell's Requested Modification & Suspension

■ A district court has broad discretion to provide for the support of the parties' children. *Putz*, 645 N.W.2d at 347. Its decision will not be altered on appeal unless it resolves the matter in a manner "that is against logic and the facts on record." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984).

Appellant Barnell moved to modify the child-support order to $0 and, alternatively, to hold the child-support guidelines unconstitutional, both of which the court denied. He also requested a suspension of the child-support obligation, which the court granted for three months. Barnell argues that it was unreasonable to deny the modification because the evidence shows that he had no income due to a tornado. He also argues that the findings regarding his requests for relief were erroneous.

■ Under the modification statute, a court "may" modify a child-support order upon a showing of substantial change. Minn.Stat. § 518.64, subd. 2 (2004). To support a modification of child support, the district court is required to make specific findings on the factors listed in Minn.Stat. § 518.64, subd. 2. *Moylan v. Moylan*, 384 N.W.2d 859, 864–65 (Minn.1986). It is evident that the court order in this case was fashioned for the temporary change of circumstances. The court agreed with Barnell that a suspension of all child-support obligations was reasonable due to the tornado. The court found that Barnell was in forma pauperis and needed time to get back on his feet. The court also found that the situation was not permanent, Barnell was not incapacitated, and he was not prevented from earning income again. Under these circumstances, it was not an abuse of discretion to deny a modification [6] and to order a suspension. The evidence sustains the findings that there was a temporary condition justifying extreme relief, but not permanent relief.

■ Barnell argues that he is prevented from seeking another modification unless there is another change of circumstances since the last hearing. Under the facts of this case, this assertion is incorrect. The court confined itself to a temporary suspension and anticipated further review as necessary. Although the district court order did not provide for continuing

---

**6.** Because we affirm the suspension and the denial of modification, appellant's argument that the district court erroneously found that he had sought a "complete elimination" of his child-support obligation appears to have been rendered moot. Nevertheless, we conclude the district court could reasonably interpret the three motions to modify (reduce child support to $0, child care expenses to $0, and delete his obligation to pay the child's medi-

cal insurance) as a request to completely eliminate the support obligation. If all of appellant's motions to modify had been granted, he would be paying nothing to Doll for their child's support, and support would only be ordered if Doll, the party least likely to have access to Barnell's financial facts, could demonstrate that Barnell's circumstances had changed substantially. The finding was not erroneous.

the pending matter, it is evident that the court's order was not expected to impair full review of the matter in the future. Upon further consideration of the case, if necessary, retroactive review will be permitted, based upon appellant's good faith failure to make an earlier petition for further consideration of the case. Appellant's delayed filing of a further claim for relief is duly explained by his inability to anticipate the conclusion of this court that continued district court review of his petition might occur.[7]

### III.

■ Appellant Barnell moved this court to strike respondent Stearns County's entire brief and appendix and for an award of attorney fees. He argued that the county filed a "spurious brief misrepresenting the issue on appeal" and made numerous false, misleading, and irrelevant statements in the brief.

Having considered Stearns County's brief and appendix and Barnell's list of alleged rule violations, we determine that rule compliance was substantial and at least such as to suggest no ignorance or willful disregard for the rules. Neither the county's identification of issues, which was the recurring and primary complaint in Barnell's moving papers, nor its presentation of facts, frustrated our effort to examine the record and identify the questions of the case. Because the alleged violations of the rules do not suggest ignorance of or willful disregard for the rules, *see Cole v. Star Tribune,* 581 N.W.2d 364, 372 (Minn.App.1998) (awarding attorney fees where appellants did not have reasonable basis in law or fact to bring appeal and striking portions of appellants' briefs

for failing to provide citations, relying on extra-record assertions, and making repeated erroneous assertions of fact), or demonstrate use of the brief "as a vehicle for disrespect, insult, and slanderous accusations," *see State v. Duncan,* 608 N.W.2d 551, 559 (Minn.App.2000), *review denied* (Minn. May 16, 2000), Barnell has not demonstrated that this is an appropriate case for an attorney fee award.

### DECISION

We affirm the district court's judgments determining that the Minnesota child-support guidelines are constitutional under the United States Constitution's Supremacy, Due Process, and Equal Protection Clauses, and awarding appellant Barnell a temporary suspension of his child-support obligations. Appellant Barnell's motion to strike Stearns County's brief and appendix is denied.

**Affirmed; motion denied.**

---

7. Barnell argues that the court imputed income without making the prerequisite findings of voluntary unemployment or underemployment. It is clear from the order that the court did not expressly or impliedly impute income to appellant. No income findings were required to accompany the temporary suspension.